**STATE of Missouri, Plaintiff-Respondent,**

v.

**Murray HARRIS, Defendant-Appellant.**

No. 38749.

Missouri Court of Appeals, St. Louis District, Division Three.

March 7, 1978.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 10, 1978.

Application to Transfer Denied May 9, 1978.

See also 541 S.W.2d 686.

Kent E. Karohl, Kirkwood, Thomas P. Howe, Clayton, David M. Korum, Kirkwood, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Carson W. Elliff, Asst. Attys. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for plaintiff-respondent.

KELLY, Judge.

Murray Harris, the appellant, was convicted by a jury in the Circuit Court of the City of St. Louis of "illegal delivery of a Schedule II Controlled Substance, phenmetrazine" and of "illegal possession of a Schedule II Controlled Substance, phenmetrazine" on September 19, 1974. The trial judge, having found that appellant had previously been convicted of a felony,—receiving earnings of a prostitute,—imposed sentences of seven and five years, respectively, in the custody of the Missouri Department of Corrections, said sentences to be served concurrently.[1] Appellant has filed his appeal from that judgment.

The facts the jury could find from the evidence adduced at trial on behalf of the state are that on March 28, 1974, at approximately 1:45 p. m. Mr. Harris was driving an automobile with three female passengers in it southwardly on Grand Avenue approaching the eastbound entrance to Interstate 44 in the City of St. Louis. At the same time and place Detectives Robert Hawkins and Gary Hayes were also proceeding southwardly over and along Grand Avenue in an unmarked police car when Detective Hawkins recognized Mr. Harris, whom he had met twelve years before.

---

1. This same case was before this court once before. See: *State v. Harris*, 541 S.W.2d 686.

The automobile Mr. Harris was operating was in the lane immediately to the right of the lane in which the two detectives were riding in an unmarked police vehicle, and approximately one-half car length in front of the police vehicle.

Detective Hawkins pulled the police car up to the left of and within a few feet of the Harris automobile which was then stopped at a stop light while waiting for it to turn green. Mr. Harris was behind the wheel of his car, one of the female passengers was seated to his right in the front seat of the vehicle, and the other two female passengers were riding in the back seat. From this vantage point Detective Hawkins observed Mr. Harris reach to his side, pull up a hypodermic syringe containing an orangeish colored liquid, and hand it to one of the passengers in the rear seat. Detective Hayes testified that he too observed the appellant hand the syringe to one of the passengers in the rear of the Harris automobile.

At about this time the traffic light turned green and Detective Hawkins "dropped behind the Harris automobile" as it proceeded southwardly on Grand Avenue and sounded the siren on the police car. He continued following the Harris automobile for a short distance until both vehicles were able to find a place to come to a stop.

After both cars came to a stop, Detective Hawkins alighted from the police vehicle and walked up to the driver's door where he identified himself as a police officer and asked everyone to get out of the car. After Mr. Harris and his three female passengers got out of the Harris car, Detective Hawkins advised them that they were all under arrest for violation of the Missouri Controlled Substance Law, and directed them to stand to the rear of the automobile. After Mr. Harris and his passengers did as they were directed, a search of the motor vehicle resulted in the seizure of a hypodermic syringe and an aspirin bottle wrapped in a cloth, containing a pinkish liquid in the back seat and two hypodermic syringes on the front seat, right next to where Mr. Harris had been seated, covered by a black suit coat, which was folded over the syringes. All of these hypodermic syringes when found contained an orange-colored liquid.

These items were seized and Joseph Stevens, a criminalist employed in the Crime Laboratory of the St. Louis Police Department, testified that he ran tests on the substances seized and identified the liquid substance in the syringes as phenmetrazine.

Appellant assigns seven Points as grounds for the outright reversal of his conviction, or, in the alternative, for reversal and remand for a new trial.

Because we find that appellant either did not preserve some of the Points for review on procedural grounds, or that there is no merit to his contentions, we affirm.

■ Appellant's initial Point Relied On is that the trial court erred in failing to sustain his motion for judgment of acquittal at the close of all of the evidence because (1) the only physical evidence was the product of an unlawful and unconstitutional search and seizure without probable cause and was improperly admitted in evidence, and (2) the state wholly failed to prove that phenmetrazine is a Schedule II controlled substance.

Appellant has failed to incorporate into this record on appeal the testimony adduced in support of his motion to suppress the items seized from his automobile which, according to a minute entry contained in the transcript, was heard and overruled on May 6, 1974. In the absence of this evidence we are unable to review the first sub-point of this Point Relied On. It is the responsibility of the appellant to furnish to this court a complete transcript, containing those portions of the "record, proceedings and evidence necessary to the determination of all questions to be presented to the appellate court for decision." Rules 81.12(b) and 81.14(a) V.A.M.R. The question presented here is whether the physical evidence seized from appellant's motor vehicle was the product of an unlawful search and seizure. To decide this question it is necessary that we have before us the record of the evidence offered by the appellant at the pre-

trial evidentiary hearing in support of his motion to suppress said evidence.

It is the responsibility of the appellant to furnish this court with an adequate transcript with which to review those trial errors he contends entitle him to a reversal of the judgment from which he appeals. Rule 81.12(a), V.A.M.R. His failure to furnish us with the requisite evidence in support of his motion to suppress said evidence leaves us with no alternative other than to rule this sub-point against him.

▮▮▮ Appellant's next sub-point is directed to an alleged failure on the part of the state to prove as a part of its case that phenmetrazine is a Schedule II controlled substance.

The state, to support this element of its case, introduced into evidence a document— State's Exhibit No. 6—consisting of a Certification by the Secretary of State of the State of Missouri that the pages annexed thereto contained a full, true and complete copy of "Lists of Controlled Substances and All Amendments Thereto Filed by the Division of Health of Missouri Currently in Effect as the same appears on file and of record in this office." This Certification was dated February 7, 1974, and bore the signature of James C. Kirkpatrick, Secretary of State.

There were twenty-five pages annexed to this Certification. The first three pages consisted of a letter dated December 18, 1973, from Herbert R. Domke, M.D., Director, Missouri Division of Health, directed to James C, Kirkpatrick, Secretary of State, informing him that Methaqualone had, by order of October 4, 1973, been included in the Code of Federal Regulations, that the Division of Health did not object to the inclusion of this substance to the controlled substances list and therefore it was to be similarly controlled in Missouri, and that effective November 4, 1973, Methaqualone was to be added to the controlled substances list of September 26, 1973. In this same letter the Secretary of State was informed that on November 13, 1973, an order amending the Code of Federal Regulations transferring Amobarbital, Secobarbital and Pentobarbital from Schedule III to Schedule II was published in the Federal Register; that the Division of Health did not object to this rescheduling and therefore these substances were to be similarly controlled in Missouri and changes effecting that rescheduling of the three substances to the controlled substances list of September 26, 1973, should become effective on December 13, 1973. This letter concluded with a paragraph as follows:

"This information is submitted for filing with the controlled substance list and it is requested that this information be included with requests for certified copies of the controlled substances lists."

The next page of this annexation is a second letter from Dr. Domke to the Secretary of State dated September 26, 1973, wherein is copied verbatim § 195.230 RSMo. and § 195.017, subsection 11, RSMo. The concluding paragraph to this letter reads:

"Therefore, the attached list has been prepared for filing and is hereby submitted."

Attached to this letter is a document consisting of twenty-two pages under the heading "Schedules of Controlled Substances," and on page 5 of this List, under Schedule II, appears "(3) Phenmetrazine and its salts."

When the Assistant Circuit Attorney offered this Exhibit into evidence at trial, counsel for appellant interposed the following objection:

"Judge, I'm referring to State's Exhibit 6, which is a copy from the section of the statute that is a list of the controlled substances and all the amendments thereto. Under Section 195.200, as I recall the statute, it says when something is published in the Federal Registry and if the State does not object thereto or order a hearing within thirty days, its automatically accepted by the State of Missouri. It refers to several drugs. And in this exhibit, which, of course, is a list of the controlled substances, it lists phenmetrazine and its salts, as I read the exhibit, as a Schedule III Controlled Substance.

There is nothing in there which shows that the Federal Register was changed. I think if you read the statute you will note that phenmetrazine, under Section [Chapter] 195, is a Schedule III Controlled Substance.

While I have no objection to the authenticity of this list, I do not think that the requirements of the statute were met, and I don't think this follows statutory procedure.

\* \* \* \* \* \*

"As I said before, the Division of Health of the State of Missouri did not follow the provisions of 195, which has a certain requirement when a drug is to be changed from one category to another. I think there is here no question in the statute as it now reads to show that phenmetrazine to be a controlled substance in Schedule III, and that's our only objection. The real objection is that there has been a failure to fulfill the requirements of the statute which would effectively make the drug a Schedule II, as contended by the prosecution."

The trial court overruled this objection and received the Exhibit into evidence.

In his motion for Judgment of Acquittal Or, In the Alternative, For a New Trial, appellant raised this Point as follows:

"2. The State wholly failed to make a submissible case in failing to prove phenmetrazine was a Schedule II Controlled Substance, as alleged in the Amended Information; where, Section 195.-017(5)(6)(b) [(6)(2)(b)] provides that said substance is a Schedule II (sic) Controlled Substance; and where there is no proof that phenmetrazine was ever rescheduled under the provisions of Section 195.015(4), the only offer of proof in that regard being in respect of some other drug and its rescheduling and attached thereto as a part of Exhibit 6; there was no proof that the drug was designated rescheduled or deleted as a controlled substance under Federal law or that notice thereof was given to the Missouri Division of Health; that said Division similarly controlled the substance after the expiration of thirty (30) days from publication in the Federal Register of a final order designating or rescheduling the substance; or that said Division raised any objection to rescheduling or republishing the same as rescheduled."

In his brief in this court, appellant argues that when Chapter 195 RSMo. was enacted in 1971 phenmetrazine and its salts were listed as a Schedule III Controlled Substance—Section 195.017, sub-section 6, subdiv. 2, par. b—and that when the State offered Exhibit No. 6 into evidence he objected to its admissibility on the grounds that there was no evidence that the drug phenmetrazine was ever rescheduled pursuant to the requirements of Section 195.015, sub-section 4 RSMo. Supplement 1971.

In support of this contention, appellant argues: (1) the statutes appearing in the Cumulative Supplement, 1973, p. 472, were certified to be true and correct copies of the existing laws of the State of Missouri on the 1st day of October, 1973, whereas "Exhibit Number Six, part two" purports to be the Schedules of Controlled Substances and bears the date of September 28, 1973; (2) there was no proof that the drug was rescheduled or redesignated under Federal Law, or that any other requirements for rescheduling were complied with by the Division of Health, i. e. by the Division of Health reporting the rescheduling to the General Assembly in accord with § 191.420 RSMo. 1969.

Respondent replies to this argument of the appellant that there is a strong presumption in favor of regularity in the Division of Health's reclassification of phenmetrazine as a Schedule II controlled substance and the appellant failed to overcome this presumption by clear and convincing evidence.

With respect to appellant's first argument, the statutes appearing in the Cumulative Supplement, 1973, are prima facie evidence only of the laws of the State of Missouri as of that period. Section 3.090(2) RSMo. 1969, *Protection Mutual Insurance Co. v. Kansas City*, 504 S.W.2d 127, 130[2]

(Mo.1974). The issue then is whether the state's evidence overcame this prima facie evidence that phenmetrazine was, as listed in Section 195.017, sub-section 6, sub-div. 2, para. (b) Cumulative Supplement, 1973, or was, as the state contends, a Schedule II controlled substance.

Appellant makes no direct attack on the validity of the certificate under the seal of the Secretary of State to which the list of controlled substances and all amendments thereto filed by the division of health of Missouri currently in effect on file and of record in the office of the Secretary of State as of February 7, 1974, is annexed. This certificate, under the seal of the Secretary of State, was sufficient to make the document admissible in evidence under § 490.180 RSMo.1969. *State v. Winters,* 525 S.W.2d 417, 421[2] (Mo.App.1975).

Whether phenmetrazine is a Schedule II or a Schedule III controlled substance is a matter of law. *State v. Winters,* supra, l.c. 422[3]; *State v. Carter,* 475 S.W.2d 85, 90[5] (Mo.1972), and the court may take judicial notice of the law to the effect that phenmetrazine is a Schedule II controlled substance. *Skaggs v. State of Indiana,* 260 Ind. 180, 293 N.E.2d 781, 784[1] (1973).

The letter of September 26, 1973, to the Secretary of State from Dr. Domke was in compliance with the requirements of Section 195.017, sub-section 11, RSMo. Cum. Supp. 1973, that the division of health revise and republish the schedules of controlled substances semi-annually from September 28, 1971, and annually thereafter. The listing of phenmetrazine as a Schedule II controlled substance is evidence that at some time prior to that date said stimulant had been rescheduled from a Schedule III controlled substance to a Schedule II controlled substance in accord with the provisions of Section 195.015, sub-section 4 RSMo. Cum.Supp. 1973.

Notice that phenmetrazine was rescheduled from a Schedule III to a Schedule II controlled substance, effective October 28, 1971, by the Federal Director of the Bureau of Narcotics and Dangerous Drugs, under authority of 21 U.S.C. § 811, was published in 36 F.R. 20686 (1971). This action authorized the Missouri Division of Health to act under Section 195.015, sub-section 4 RSMo. Cum.Supp. 1973, and reschedule phenmetrazine from a Schedule III controlled substance to a Schedule II controlled substance. *State v. Winters,* supra, 525 S.W.2d l.c. 421[1]. In the absence of any evidence that the division of health objected to this rescheduling, it became effective in this State 30 days after publication of the notice aforesaid. Appellant has not suggested that the rescheduling of phenmetrazine was changed by statute and we know of no statute invalidating this rescheduling.

In the absence of any evidence that the rescheduling of phenmetrazine as listed in the "Lists of Controlled Substances and All Amendments Thereto Filed by the Division of Health of Missouri Currently in Effect" and on file with the office of the Secretary of State as of February 7, 1974, as the certificate of the Secretary of State attests, was not legally accomplished, we hold that the trial court was not guilty of error in admitting Exhibit No. 6 into evidence and did not err in failing to sustain appellant's motion for judgment of acquittal at the close of all of the evidence.

Appellant's second Point Relied On, again with two sub-points, is that the trial court erred in failing to sustain his motion for judgment of acquittal at the close of all of the evidence because (1) Section 195.015 sub-section 4 RSMo. Cum.Supp. 1971 is unconstitutional because it constitutes an unlawful delegation of legislative authority to the division of health and (2) Sections 195.020 and 195.180 RSMo. Cum. Supp. 1973 are unconstitutional because "they operate together in an attempt to place upon the defendant the burden of proof of innocence and to remove from the State the burden of proof of each and every element of its case."

Ordinarily in these circumstances we would determine whether this Point Relied On involved a question of constitutional construction and if we determined it did, we would be required to transfer the entire case to the Supreme Court because we

would have no jurisdiction to decide these questions. Constitution of Missouri, 1945, Art. 5, § 11, *Williams v. Williams*, 498 S.W.2d 585, 587[3] (Mo.App.1973), (rev'd) other grounds, 510 S.W.2d 452 (Mo.banc 1974).

Appellant has failed to preserve these constitutional questions for review. To preserve these constitutional questions for review appellant was required to raise them at the earliest available opportunity and to state with specificity which sections of the Federal or State Constitutions he claims the statutes violate. *City of St. Louis v. Butler Co.*, 358 Mo. 1221, 219 S.W.2d 372, 376[6] (banc 1949); *State v. Davis*, 462 S.W.2d 178, 180[1] (Mo.App.1970).

When the first available opportunity to challenge the constitutionality of a statute arises for the purpose of preserving a question for review on appeal may still be open to question in this state. It has been held that where the question was raised for the first time in a motion to quash the information this requirement was satisfied. *State v. Becker*, 268 S.W.2d 51, 52[2] (Mo.App. 1954). This same case in a later appeal, *State v. Becker*, 364 Mo. 1079, 272 S.W.2d 283, (Mo.1954), in denying the motion of the Attorney General to transfer the cause back to the St. Louis Court of Appeals, said l.c. 284[1]: "Defendant raised below at the first opportunity . . . that Section 563.280, supra, is violative of the due process provision of the State and Federal Constitutions . . ." In *State v. Davis*, 462 S.W.2d 178 (Mo.App.1970) the defendant was charged with failing to provide adequate support for his four children. At arraignment he pleaded not guilty and was granted leave to file preliminary motions. When the case was called for trial, approximately two months later, he filed a written motion to dismiss the information pursuant to the leave previously given and attacked the constitutionality of the statute under which he was charged. The trial court reserved its ruling on the motion to dismiss and ordered the trial to proceed. The cause was tried to the court without a jury and at the conclusion of the testimony of the trial court took the case under submission.

Some seventy-eight days later, defendant, while the case was still under submission, filed an amended motion to dismiss in two counts. The first count repeated his claim the original motion to dismiss contained and the second Count moved to dismiss the information on the grounds that the statute under which the charge was brought violated the equal protection of the laws provision of the Fourteenth Amendment to the Constitution of the United States. The trial court overruled defendant's amended motion to dismiss, found him guilty and sentenced him. Holding that defendant had met the requirement that the constitutionality of the statute under which he was being prosecuted be challenged at the earliest available opportunity, the court said, l.c. 180:

"Defendant's attack on the constitutionality of § 559.353, under which he was charged, was raised by his motion and his amended motion to dismiss, filed (in effect) on the day he was arraigned and pleaded not guilty."

In *University City v. Diveley Auto Body Co.*, 417 S.W.2d 107, 109[5] (Mo.banc 1967) the Supreme Court held that a motion to dismiss was timely although no challenge of the constitutionality of the ordinance was raised in the municipal court and the first attack came in the circuit court at the close of the plaintiff's case.

We conclude that appellant failed here to raise the constitutional issues at the earliest available opportunity. Appellant did not challenge the constitutionality of these statutes until after jury verdict, in paragraphs 4 and 5 of his Motion for Judgment of Acquittal or For New Trial. This court, in *State v. Brown*, 446 S.W.2d 498, 499[1] (Mo. App.1969) held that in a prosecution for failure to provide adequate support for six children under the age of sixteen years of age the appellant's contention that the statute under which he was prosecuted, § 559.-353 RSMo. 1969, was unconstitutional, was not properly preserved in the trial court where no objection on constitutional grounds was made to a question propounded to the prosecuting witness, and mother

of the children, whether she had any children by the appellant, and where, at the conclusion of her testimony, his counsel did not move to strike her testimony that appellant was the father of the children involved.

The holding in *University City v. Diveley* is inapposite here because in *Diveley* the attack was made during a trial de novo on constitutional grounds and at the close of plaintiff's case. Furthermore, the case the court relied on as authority for this holding—*Village of Bel-Nor v. Barnett*, 358 S.W.2d 832 (Mo.1962)—demonstrates that the defendant raised the constitutional issue in the Chairman's Court of the Village of Bel-Nor when the Village concluded its evidence. Here, defendant did not raise the constitutional question in his motion for directed verdict at the close of the state's case. In fact, he put on evidence and thereafter, renewed his motion for directed verdict at the close of all of the evidence on the same grounds stated in the motion filed at the conclusion of the state's case, and did not raise the point until filing his post-verdict motions. We hold defendant failed to raise the constitutional issues at the earliest available opportunity and did not therefore preserve those issues for review.

■ Appellant next contends that the trial court erred in failing to sustain his motion for judgment of acquittal at the close of all of the evidence as to "Count I or Count II or both" because each charge involves the same act or incident and the element of possession was common to both Counts, thereby constituting a violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 19, of the Missouri Constitution. The thrust of this argument is that each Count with which he is charged involved the same act and therefore he was charged and convicted twice of but one offense. He argues that § 195.020 RSMo. Cum.Supp. 1973, purports to establish numerous crimes: possession, dispensing, manufacturing, having under control, selling, prescribing, etc. of one of the scheduled controlled substances. His contention is that the act of delivering the syringe and its contents to one of the passengers in the Harris car at a time when he also had two syringes containing phenmetrazine lying on the car seat at his side and covered with a coat constituted but one crime.

This Point, like the preceding one, was not preserved for review because it was not raised until appellant filed his after-trial motions. We rule this Point against appellant.

Points Relied on IV and V are directed against Instructions No. 5 and No. 6 given and read to the jury.[2] He attacks these Instructions from seven different angles.

Appellant's initial attack against these two Instructions—Instruction No. 5 being the verdict-director for Count I and Instruction No. 6 the verdict-director for Count II—is that it was error to read them to the jury because Exhibit No. 6 was erroneously admitted into evidence and therefore there was no evidence to support the required finding that phenmetrazine was a Schedule II controlled substance and that Section 195.015, sub-section 4 RSMo. Cum. Supp. 1973 constituted an unconstitutional delegation of legislative authority. This Point is without merit because, as we have already ruled, Exhibit No. 6 was properly admitted and appellant failed to preserve the constitutional questions by timely objections.

Appellant further contends that the trial court erred in reading these Instructions to the jury because they failed to conform with the requirements of MAI–CR 14.10 in three ways:

1) both instructions failed to incorporate into the Instructions the clause ". . . unless you find and believe from the evidence by a preponderance thereof that the (violation) was lawful as submitted in Instruction No. _____;"

2) in failing to omit the general converse, and

3) in failing to give and read to the jury an affirmative defense instruction as required by MAI–CR 14.10.

---

**2.** For the instructions given see Appendix at the end of this opinion.

The evidentiary basis for each of these contentions is the evidence adduced from the defendant during cross-examination by the Assistant Circuit Attorney in the defendant's case that he was familiar with the substance phenmetrazine and had used it for his weight for "like a year" on prescription from a doctor.

 Because of the presence of this evidence in the record, appellant contends that the Notes on Use to MAI–CR 14.10, paragraphs 6(a) and 6(b), have been violated.

Paragraph 6(a) to the Notes on Use following MAI–CR 14.10 requires where there is substantial evidence to support a defense, a separate instruction covering the defense must be given, whether requested or not, and paragraph 6(b) requires that the State's verdict-director in such cases must include a clause that "Unless you find and believe from the evidence by a preponderance thereof that the (violation described) was unlawful as submitted in Instruction No. _____."

The trial court, pursuant to Rule 20.02(f) V.A.M.R., after the conclusion of the evidence, held an Instruction Conference. During this conference the trial court, in chambers, informed counsel of the Instructions it proposed to read to the jury and inquired of appellant's trial counsel if he "had anything on the Instructions." Appellant's counsel responded: "The defendant, at this time, objects generally to the Instructions." The trial court then overruled said objection.

Having chosen to interpose a general objection to the trial court's instructions at this stage of the trial it became incumbent on appellant's counsel to make specific objections in his Motion for New Trial following the verdict of the jury if he was to preserve any error in the giving or refusal to give any instructions, for review in this court. Rule 20.03 V.A.M.R.

Although we have scoured appellant's Motion for New Trial we have found no specific allegation of error to support any of the contentions he now espouses.

Paragraphs 3 and 5 of appellant's Motion for New Trial are the only paragraphs in his Motion for New Trial which we have found approach a statement of the Points now under consideration. Paragraph 3 of appellant's Motion for New Trial reads:

"The court erred in giving and reading to the jury Instruction 5, where the evidence therein was illegally seized. There was no showing that the drug was a Schedule II Controlled Substance Under Chapter 195. There was no showing that the defendant was aware of the character of the drug or that he intentionally or knowingly distributed the same. There was no proof that the same was not subject to an exception, excuse, proviso, or exemption contained within the law, particularly where the defendant testified in answer to the State's question that he had a legal prescription for the drug mentioned in evidence as a diet pill, contrary to § 195.180."

Paragraph 5 is a verbatim repetition of this paragraph, the only difference being the insertion of the numeral 6 for the numeral 5 when reference is made to the Instruction under attack.

As we comprehend these allegations of error they are directed to the question whether there is sufficient evidence in the record to support the giving of these verdict-directors, not whether they are in violation of the requirements of the Notes on Use following MAI–CR 14.10. Nowhere do we find any reference to MAI–CR 14.10 and the Notes on Use; nor is there any allegation that the appellant was entitled to an instruction on the defense of lawful possession by reason of a prescription. Rather, they are all directed at alleged failure of proof. Initially, the complaint is that the Instruction should not have been read because it was based upon illegally seized evidence, which, if the logic of this assignment is followed, means that the evidence should have been suppressed and would not therefore support the giving of the Instruction. The next ground is that there was *"no showing"* that the drug was a Schedule II controlled substance; that defendant was

aware of the character of the drug; or that he intentionally or knowingly distributed the drug; and finally, "*There was no proof that the same was not subject to an exception, excuse, proviso, or exemption contained within the law . . .*" None of these speak in terms of the failure to give an affirmative defense instruction or a modification of MAI–CR 14.10 as required by the Notes on Use relied upon.

We rule this Point against appellant because it was not properly preserved for review in this court.

 In Point V, appellant's attack against Instruction No. 5, alone, is three pronged:

1) that § 195.020 RSMo. Cum.Supp. 1973, does not proscribe the mere delivery of phenmetrazine,

2) there is a fatal variance between the charge in the information and the Instruction, and

3) the Instruction, as given, deviated from MAI–CR 14.10 by failing to submit the charge against the defendant in language permitted and required by MAI–CR 14.10.

The thrust of appellant's argument in support of the first attack is that Count I of the substitute information upon which he was tried charged that he did "dispense and deliver" the phenmetrazine to Naomi Jeffords whereas the Instruction required the jury to find only that "he delivered" the drug. He argues that the word "deliver" does not appear in § 195.020 RSMo. Cum. Supp. 1973 and MAI–CR 14.10 does not permit the use of the word "deliver" in the Instruction. From this, he concludes that the Instruction authorized a conviction where there is no offense.

He further argues that there is a fatal variance between the charge and the submission because the substitute information charged him conjunctively with dispensing and delivering and the Instruction only required a finding of delivery.

His third argument is that the Instruction as given constitutes a deviation from the approved Instruction in that the word

"delivered" or "delivery" does not appear in the approved Instruction, and it is therefore error.

Again, our study of the appellant's Motion for New Trial fails to reveal any assignments of error on these grounds. Therefore, if we are to review these assignments of error we would do so only under Rule 27.20(c) as "plain error," and then only if we concluded that manifest injustice or a miscarriage of justice had resulted therefrom.

We are of the opinion that "plain error" is not present in this case and that no error was committed by the use of the word "delivered" in the Instruction.

Section 195.010(11), as enacted, L.1971, p. 237, defined "dispense" to mean "to deliver a narcotic or controlled dangerous drug to an ultimate user or research subject by or pursuant to the lawful order of a practitioner including the prescribing, administering, packaging, labelling, or compounding necessary to prepare the substance for such delivery . . . Deliver means the actual, constructive or attempted transfer from one person to another of a controlled substance whether or not there is an agency relationship and includes a sale." Section 195.010(8), as enacted L.1971, p. 237, defined "deliver" to mean "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." We are of the opinion that the word "dispense" includes "deliver." The difference between the two is that when one dispenses a controlled substance he or she "delivers" it "to an ultimate user or research subject, by or pursuant to the lawful order of a practitioner . . ." as that term is defined in subsection 27 of the statute. See *State v. Rollins*, 449 S.W.2d 585, 590[4] (Mo.1970).

A similar argument was made by the appellant in *State v. Gordon*, 536 S.W.2d 811 (Mo.App.1976), but then the argument was directed to whether the appellant was sentenced under the proper statute. Appellant contended that there was no punishment provided for "distributing" a Schedule I or Schedule II controlled substance in

§ 195.200, sub-section 1, sub-div. (5) and therefore he should have been sentenced under the provisions of sub-div. (2) of the statute. To resolve this problem we there referred to the definitions contained in § 195.010 and concluded that the term "deliver" included the term "distribute" and ruled that there was no merit to his contention.

The variance between the wording of the instructions and the wording of the statute is not, in this case, fatal, for the reason the sense of the instructions was not destroyed by the insertion of the word "deliver" in· lieu of the word "dispense." The former is included within the latter.

With respect to appellant's argument that the wording of the substitute information and the Instructions must be the same, there is no requirement that they be precisely the same. *State v. Barnes,* 517 S.W.2d 155, 167[18] (Mo.App.1974). The one was, as we have noted, included within the other, and we believe that is sufficient.

It is not every deviation from an approved Instruction which requires reversal, and although deviations should be discouraged in all cases, even where a deviation is error the question whether it is prejudicial error remains to be judicially determined. Rule 20.02(e); *State v. Billingsley,* 534 S.W.2d 484, 485[2] (Mo.App.1975); *State v. Vernor,* 522 S.W.2d 312, 316[6] (Mo.App. 1975). We conclude that even if this insertion of the word "delivered" for the word "dispensed" is a deviation and as such constituted error, it was harmless error because the Instruction as given did not tend to confuse or mislead the jury in its deliberations on the issues in this case. *State v. Adams,* 531 S.W.2d 763, 764[1] (Mo.App. 1975); *State v. Billingsley,* supra, l.c. 486[4]; *State v. Vernor,* supra, l.c. 316[7].

The next alleged error for disposition is that the trial court was guilty of plain error in failing to submit to the jury MAI–CR 2.70.

MAI–CR 2.70 is a mandatory Instruction which the trial court is required to submit whether, or not it is requested by either party in the case of a multi-count indictment or information. It provides:

"The defendant is charged with a separate offense in each Count submitted to you. Each offense and the evidence and law applicable to it should be considered separately. Any evidence which was or has been limited to one of the offenses charged or one purpose should not be considered by you as to another offense charged or for any other purpose.

"You may find the defendant guilty or not guilty on any or all of the Counts submitted against him (or you may find him not guilty by reason of a mental disease or defect excluding responsibility).

"You should render a separate verdict as to each Count submitted against the defendant."

Admittedly appellant has not preserved this in his Motion for New Trial, and for that reason requests that we consider it as "plain error."

Although by this time no omission of this kind should be tolerated, there is ample authority that where, in a case of this kind, the testimony with respect to the two offenses joined in a single indictment or information is distinct, where the trial court gave a separate converse Instruction on each of the Counts, and where the jury was given four verdict forms—two on each Count, one for not guilty and one for guilty—there was no room for the jury to intermingle the evidence and there was therefore no plain error in the failure of the trial court to submit MAI–CR 2.70. *State v. Boyington,* 544 S.W.2d 300, 304[6] (Mo. App.1976); *State v. Johnson,* 537 S.W.2d 816, 820[14] (Mo.App.1976).

The testimony here with respect to the two Counts was distinct. As to Count I, the police officers testified that they observed the appellant passing a syringe with what proved to phenmetrazine to a young female passenger in the back seat of appellant's automobile in broad daylight. With respect to Count II, the testimony was that there were two syringes concealed in the folds of a coat belonging to the appellant which was

found immediately adjacent to where he had been seated as he was operating his automobile over and along South Grand Avenue. The jury was read separate Instructions with reference to each Count, and each Instruction had a proper converse paragraph. The jury was also furnished four verdict forms; two for each Count; one for a finding of guilt on Count I, one for a finding of not guilty on Count I, one for a finding of guilt on Count II, and one for a finding of not guilty on Count II.

We have also studied the argument of the Assistant Circuit Attorney and have discerned that he, in his argument, referred to Instructions Nos. 5 and 6 and the fact that they were referable to separate Counts. He also argued the specific evidence he concluded supported a conviction on each Count. The jury returned separate verdict forms signed by its forelady, wherein it declared that it found appellant guilty of each Count, and also returned unsigned the two not guilty verdict forms.

We conclude that under these circumstances there is no evidence of manifest injustice nor miscarriage of justice and we rule this Point against appellant.

▇▇▇▇ Appellant's final Point is that the trial court erred in overruling his objections to the prosecutor's cross-examination of the defendant beyond the scope of his direct examination and thereby permitted prejudicial evidence to be admitted.

The evidence of which appellant complains under this Point relates to questions directed to the appellant as to whether he was familiar with and had previously used phenmetrazine, and whether syringes had ever been kept in his house.

When cross-examination outside the scope of a defendant's direct examination constitutes prejudicial error has troubled the appellate courts. Cross-examination on matters beyond the scope of a defendant's direct examination is generally prohibited because it is considered to be violative of § 546.260 RSMo.1969, the statute which removed the common law prohibition against a defendant testifying in a criminal cause

or prosecution and specifically provided that where a defendant testified in his own behalf he "shall be liable to cross-examination, 'as to any matter referred to in his examination in chief, . . .'" *State v. McClinton*, 418 S.W.2d 55, 59[5] (Mo.1967). The case law of this state is clear, however, that when a defendant chooses to offer himself as a witness in his own case and in doing so merely testifies to a general denial of the charge during his examination in chief, the prosecution is not limited to a mere reiteration of matters covered on direct, but may cover all matters within the purview of the examination in chief. *State v. Holland*, 530 S.W.2d 730, 734[7] (Mo.App. 1975). In general, the cases hold that the permissible extent of cross-examination in a criminal case where the defendant testifies is largely a matter of discretion with the trial court. *State v. Richardson*, 515 S.W.2d 557, 562[6] (Mo.banc 1974). Whether cross-examination in such case is error, has generally been decided on a case by case basis. *State v. McClinton*, supra, 418 S.W.2d l.c. 59[6].

Here appellant's testimony in chief consists of four pages of the transcript on appeal. After identifying himself and stating his occupation, his testimony related to the occurrence of March 28, 1974 on South Grand Avenue and the arrest which took place there. He denied knowledge that there were any syringes or narcotics in his car and that he handed a syringe to Naomi Jeffords at that time as the police officers had testified they had observed. On cross-examination the following colloquy took place:

"Q. . . . You testified there was some syringes in the car; is that right?

A. In her baby bag.

Q. Are you familiar with syringes?

A. I have never used a syringe in my life.

Q. Have you ever had a syringe in your house or over at 5417 Arsenal?

MR. HOWE: Wait a minute. That's outside the scope of the direct testimony. I would object to that.

THE COURT: Overruled.

A. I have a brother.

Q. Have you ever had a syringe in your house?

A. I'm not going to answer the question.

Q. My question is: Have you ever had any syringes in your house, over at 5417 Arsenal?

THE COURT: Do you understand the question, sir?

A. Yes. The question is, has there been syringes in my house. Yes, sir."

We believe, when viewed in context, there is no abuse of discretion here which would warrant a reversal.

Appellant, in his examination in chief, testified to the presence of syringes in the baby diaper bag of Ms. Jeffords which, according to his testimony, he first became aware of when the police detectives seized them during the search of his automobile. No objection was lodged when appellant was asked if he was familiar with syringes; it was not until he was asked if he ever had a syringe in his house on Arsenal Street that an objection was made. After the objection was overruled, he refused to answer the question and even his answer after the Court's inquiry is equivocal and did not clearly constitute an answer to the question.

When an improper question is asked but not answered, there generally is no prejudicial error. *State v. Holland*, supra, l.c. 733[4]. Immediately after the last answer quoted hereinabove, the line of inquiry was directed by the Assistant Circuit Attorney to the contents of the syringes found in appellant's car at the time of the arrest. Any error occasioned by the posing of the question did not ripen into prejudicial error because the question was never unequivocally answered.

We rule this Point against the appellant.

Judgment affirmed.

GUNN, P. J. and WEIER, J., concur.

### APPENDIX

"INSTRUCTION NO. 5

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on March 28, 1974, in the City of St. Louis, State of Missouri, the defendant delivered a drug known as phenmetrazine, and

Second, that defendant was aware of the character of the drug, and intentionally and knowingly delivered it, then you will find the defendant guilty under Count I of delivery of a Controlled Substance.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, you must find the defendant not guilty of that offense.

(MAI–CR 14.10, by the State)

### INSTRUCTION NO. 6

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that on March 28, 1974, in the City of St. Louis, State of Missouri, the defendant had in his possession a drug known as phenmetrazine, and

Second, that the defendant was aware of the character of the drug and intentionally and knowingly had it in his possession, then you will find the defendant guilty under Count II of the possession of a Controlled Substance.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, you must find the defendant not guilty of that offense.

(MAI–CR 14.10, by the State)"