STATE of Missouri, Respondent,

v.

Donald Wayne ROGERS, Appellant.

No. 45435.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 5, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 13, 1983.

Application to Transfer Denied
June 30, 1983.

Charles M. Shaw, Clayton, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, Mark Kennedy, Pros. Atty., Poplar Bluff, for respondent.

CRIST, Judge.

Defendant was convicted by a jury of receiving stolen property, a Class C Felony, § 570.080, RSMo.1978, punishable under §§ 558.011.1(3) and 560.011, RSMo.1978. The jury assessed punishment at five years, and the trial court sentenced the defendant to a five year term of imprisonment.

On February 22, 1981, just after midnight, Mr. & Mrs. Mills returned home in their 1979 Trans Am and parked the car in their usual parking place. In the early afternoon of the same day, Mr. Mills noticed his car was missing, whereupon he contacted the St. Louis County Police Department. An officer from the department arrived at the scene and filled out a stolen vehicle report. A Mr. Tony McKuin supplied the crucial evidence at trial.

McKuin recounted that on the day after the Mills' Trans Am was stolen, defendant asked McKuin to come to defendant's home. When McKuin arrived, he found defendant cleaning out the Mills' Trans Am. Defendant told McKuin the car had been stolen and asked McKuin if he would help him "fix" the car. McKuin agreed.

McKuin testified that he and defendant "fixed" the Mills' Trans Am as they had numerous other vehicles on previous occasions. "Fixing" a car he explained, entails taking the various vehicle identification numbers off a wrecked car and affixing them to a similar stolen vehicle.

McKuin testified to replacing the serial numbers on the right front fender and on the cowl. He removed the production sheets from the car and gave them to defendant. He stated defendant used a grinder and an air chisel to remove the serial numbers from the transmission and motor. Defendant also switched the Federal pollution sticker numbers. In addition to changing the numbers, the two men put body side moldings on the car.

McKuin then testified to checking the changed serial numbers to make sure they matched. He did so for his own protection because he had consented to an arrangement whereby the car would be registered and sold under his name at an auto auction that evening.

En route to the auto auction, defendant handed McKuin a Kentucky title to the car in anticipation of the sale. The car was in fact sold that evening. At the auction, McKuin received a check for $6,430.00 for the stolen Trans Am. Later that evening at defendant's home, both he and defendant's live-in companion endorsed the check. In exchange for the check and his services associated with the sale of the car, McKuin received $1,000.00 in cash from the defendant.

The stolen Trans Am was subsequently sold to Cecil's Auto Sales of Dexter, Missouri, and in turn shipped to a Chicago auto auction, where it was refused and shipped back because the serial numbers on the car did not match. The FBI became involved in the investigation, and ultimately traced the stolen car to the Mills.

 Defendant argues the state failed to produce any evidence showing defendant knowingly received stolen property. Such proof however, is unnecessary as this court has held that a person commits the act of receiving stolen property if he knowingly disposes of stolen property. *State v. Sours,* 633 S.W.2d 255, 258 (Mo.App.1982). Therefore, so long as the prosecutor has adequately proven the knowing disposal of stolen property, he need not focus on the actual receipt of the stolen goods. We believe the prosecutor has proven the requisite elements of the offense as required in § 570.-080, RSMo.1978.

 The appellant next asserts prejudicial error in the court's failure to advise the jury of the full range of punishment. Defendant believes that instructions based on MAI–CR.2d 24.10 and MAI–CR.2d 2.60 did not adequately inform the jury that they could recommend the defendant be fined in lieu of imprisonment. We disagree. The directives of MAI–CR.2d 24.10 and MAI–CR.2d 2.60 were complied with verbatim. The jury assessed nearly the maximum term of imprisonment authorized by Missouri Law for defendant's crime. *See,* § 558.011.1(3), RSMo.1978. The trial judge has control over the imposition of a fine, with the role of the jury being only advisory. Our Missouri Supreme Court has laid defendant's contention to rest in the following cases: *State v. Van Horn,* 625 S.W.2d 874 (Mo.1981); *State v. Moland,* 626 S.W.2d 368 (Mo.1982) and *State v. Koetting,* 616 S.W.2d 822 (Mo. banc 1981).

Defendant further asserts the court committed prejudicial error in allowing the prosecutor to question an FBI agent as to his investigation of a "tagging operation" in the area. Defendant's counsel objected before the witness could respond, and requested, out of the hearing of the jury, that the jury be discharged and the court declare a mistrial. In the alternative, he requested the question be stricken and the jury admonished to disregard it. The trial judge reprimanded the prosecutor and granted defense counsel's alternative request of striking the question and admonishing the jury. The prosecutor then asked the FBI agent, "When did you first become involved in an investigation of Don Rogers?" Defense counsel again requested the discharge of the jury in a mistrial. The trial judge struck the question from the record and admonished the jury to disregard it, but denied defendant's motion for mistrial.

A mistrial is a drastic remedy that will be granted only in extraordinary circumstances when the prejudicial effect can be removed in no other way. *State v. Reynolds,* 608 S.W.2d 422, 427 (Mo.1980). In the instant case the trial court took prompt remedial action before the FBI agent could answer the questions. This court has held that "[w]hen an improper question is asked but not answered, there generally is no prejudicial error." *State v. Harris,* 564 S.W.2d 561, 575 (Mo.App.1978). Our examination of the preceding exchange convinces us the trial court did not abuse its broad discretion in denying defendant's request for a mistrial.

Finally, defendant asserts prejudicial error arose from prosecutor's reference to Donna Moore during voir dire. Donna Moore lived with the defendant, and, according to McKuin, ordinarily endorsed checks received from the sale of stolen automobiles. After the prosecutor had listed the various state witnesses, he went on to say, "I believe Mrs. Donna Moore from Poplar Bluff has been named as a potential witness of Mr. Shaw." Defendant argues this placed a burden on him to testify or to have Ms. Moore testify on his behalf. This case is easily distinguished from those cited by the defendant as we do not believe prosecutor's statement in any way compelled the defendant to testify nor did the statement constitute a commentary on his or Ms. Moore's failure to testify on behalf of the defense. See, *State v. Lindsey,* 578 S.W.2d 903 (Mo. banc 1979); *State v. Hutchinson,* 458 S.W.2d 553, 556 (Mo. banc 1970).

Judgment affirmed.

CRANDALL, P.J., and REINHARD, J., concur.