**STATE of Missouri, Respondent,**

v.

**Dean L. BLAYLOCK, Appellant.**

**No. WD 36343.**

Missouri Court of Appeals,
Western District.

Dec. 10, 1985.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled
and Denied Jan. 28, 1986.

Application to Transfer Denied
March 25, 1986.

---

Andrew J. Gelbach, Warrensburg, for appellant.

William L. Webster, Atty. Gen., Christine M. Szaj, Asst. Atty. Gen., Jefferson City, for respondent.

Before BERREY, P.J., and DIXON and KENNEDY, JJ.

PER CURIAM:

Dean Blaylock appeals from his second degree robbery conviction, § 569.030, RSMo 1978, based on aider and abettor liability, and his sentence, as a prior offender, to ten years in the Missouri Department of Corrections. An opinion was issued earlier and the defendant's motion for rehearing was sustained and the cause resubmitted. In the initial opinion, the court based its affirmation of the lower court judgment on the state's representation that Florida Rule of Criminal Procedure 3.701.d.2 applied to Blaylock's 1977 Florida guilty plea to make it a prior conviction for purposes of the Missouri prior offender statute, § 558.016.2, RSMo Supp.1984. In his motion for rehearing, Blaylock points out that the above-mentioned Florida Rule only applies to offenses committed after October 1, 1983. The state has made no response.

 Blaylock asserts the court erred in (1) ruling he was a prior offender under § 558.016.2 RSMo Supp.1984; (2) allowing

him to be impeached with a Florida "guilty plea;" (3) not granting his motion for judgment of acquittal because of insufficient evidence; (4) failing to grant his mistrial requests; (5) admitting the oral statements he had made to the police; (6) limiting cross-examination of one of the state's witnesses; (7) denying his new trial motion based on juror misconduct; (8) denying his motion to dismiss the information because the prosecutor had been improperly elected; (9) allowing Bobby Joe Haskins, Blaylock's co-defendant, to take the stand and invoke the Fifth Amendment before the jury and then limit cross-examination about Haskins' prior statements; (10) failing to instruct on stealing; and (11) failing to grant his motion to disqualify the prosecutor or to dismiss the second amended information.[1] Affirmed.

Blaylock challenges the sufficiency of the evidence. Thus, the evidence and all favorable inferences reasonably drawn from the evidence are reviewed in the light most favorable to the state and all evidence and inferences to the contrary are disregarded. *State v. Cooper,* 673 S.W.2d 848, 849 (Mo.App.1984); *State v. Connor,* 651 S.W.2d 550, 555 (Mo.App.1983).

Blaylock, accompanied by Bobby Joe Haskins, an older man he had known for several years, drove Blaylock's Ford LTD into the driveway adjacent to a convenience store. Haskins got out of the car, and after pulling a nylon stocking over his face, entered the store. Haskins' right hand was in his jacket pocket and he told the two employees on duty, Dean Cantey and Patricia Stewart, that he had a gun. Haskins removed money from the cash register, ordered the two employees to lie down on the floor, and then fled. A store customer, Richard Heinaman, saw Haskins leave the store and cross the lot to where Blaylock's car was parked. Heinaman saw a Ford with a pair of steer horns on the dash, a distinctive bumper sticker, a large dent, and a gray t-shirt over the license plate, pull out of the lot and down the street. Cantey recognized Blaylock as the driver. The police were notified of the robbery and were given a description of the car and its occupants. Blaylock and Haskins were apprehended shortly thereafter. The police found $92.11 on Haskins' person, a nylon stocking on the front seat, and a gray t-shirt on the back seat. Blaylock admitted to the officers that he knew Haskins had planned a robbery and that other establishments had been "cased."

■ Blaylock first asserts the lower court erred in ruling he was a prior offender under § 558.016.2, RSMo Supp.1984. That section defines prior offender as "one who has pleaded guilty to or has been found guilty of one felony."

In October, 1977, Blaylock was charged in Florida with the felony offense of burglary. Blaylock entered a plea of guilty to the charge, but the Florida court, under law peculiar to Florida, withheld adjudication of guilt and imposition of sentence, and placed Blaylock on probation for a three-year period. In July, 1979 Blaylock was discharged from probation by the Florida court.

The Florida statute dealing with habitual offenders states in pertinent part, "... the placing of a person on probation without an adjudication of guilt shall be treated as a prior conviction if the subsequent offense for which he is to be sentenced was committed during such probationary period."

---

1. All defendant's allegations of error have been considered to the extent they were preserved. Certain of his assertions were either not raised in a timely manner or were not raised in the same manner as is now asserted. The verdict against defendant was returned on June 28, 1984. On that same date, the court granted defendant 10 additional days for a total of 25 days to file his motion for a new trial. Rule 29.11(b). Defendant's original motion for a new trial was timely filed July 18, 1984. His amended motion for new trial was not filed until August 10, 1984—several days past the 25-day deadline. There is no entitlement to present a supplemental motion for new trial filed after the maximum period of 25 days from the date on which the verdict is returned. Any motion so filed is a nullity and preserves nothing for appellate review. *State v. Wickizer,* 641 S.W.2d 849, 852 (Mo.App.1982); *State v. Miller,* 368 S.W.2d 353, 360 (Mo.1963); *State v. Townzell,* 286 S.W.2d 785, 787 (Mo.1956).

FLA.STAT.ANN. § 775.084(2) (West 1985). Blaylock argues that because the June 4, 1983, Missouri offense of which he was found guilty was committed after his Florida probation had been discharged, his Florida guilty plea does not constitute a prior conviction and cannot be used as a basis for sentencing him under Missouri's prior offender statute.

Blaylock is correct in his assertion that the Florida guilty plea does not rise to the level of a conviction. However, he errs in his interpretation of Missouri law. No where does Missouri's prior offender statute require a prior *conviction* as a prerequisite for the statute's application. It defines prior offender as one who has pleaded guilty to or has been found guilty of one felony. Blaylock does not deny, and the record does reflect that he pleaded guilty to the 1977 Florida offense. Missouri law requires nothing more. The essential showing was the plea of guilty, whether or not followed by a judgment of conviction. *State v. LaPlant*, 673 S.W.2d 782, 785 (Mo. banc 1984).

Blaylock makes much of his allegation that the Florida guilty plea was "unaccepted" by the Florida court and therefore not available for use by the Missouri courts. Yet, he fails to explain what "unaccepted" means and he fails to cite any authority supporting his argument that such a plea should be disregarded. The Florida proceeding was more than the "mere filing of a criminal charge" that Blaylock claims it was. It resulted in Blaylock pleading guilty to the charge of burglary. The court accepted his plea and placed him on probation. The Florida court could not have subjected proceeded as it did without acceptance of the guilty plea. Blaylock's allegation that his guilty plea was unaccepted in Florida and therefore unavailable here is without merit.

■ Blaylock also asserts that the application of § 558.016.2, in this case, is *ex post facto* because the statute was not in effect until after the Florida offense and after he had finished the probationary period resulting from it. The Missouri Supreme Court firmly rejected this attack on a procedurally similar statute, stating the defendant was not being punished for the prior conviction; but rather for his propensity for misconduct and thus, to apply the statute did not constitute an *ex post facto* application of the law. *State v. Acton*, 665 S.W.2d 618, 619 (Mo. banc 1984). Much of Blaylock's brief on this point focuses upon sentence enhancement, but that discussion is inapposite. Blaylock's sentence was not enhanced. After finding Blaylock was a prior offender, the court took the issue of punishment from the jury.

■ Blaylock's second point is integrally related to the first and its resolution is the same. In it, he asserts the court erred in allowing him to be impeached with the Florida plea. Missouri's impeachment statute, § 491.050, RSMo Supp.1984, provides that "*any* prior pleas of guilty ... may be proved to affect [the defendant's] credibility ...." (Emphasis added). The statute allows use of a guilty plea for impeachment even when imposition of sentence has been suspended. *LaPlant*, 673 S.W.2d at 784. Again, Blaylock's argument is without merit.

■ Blaylock next asserts the court erred in failing to grant his motion for judgment of acquittal because the state failed to prove two elements of second degree robbery; that Haskins forcibly stole money from Cantey or placed Cantey in fear, and that Blaylock knew Haskins intended to rob the store or aided and abetted in the offense. The evidence and all reasonable inferences favorable to the state, *Cooper*, 673 S.W.2d at 849, establish both elements.

The necessary force to accomplish a "forcible stealing" under § 569.030, RSMo 1978 may consist of intimidating the victim or placing him in fear. *State v. Foster*, 665 S.W.2d 348, 351 (Mo.App.1984); *State v. Atkins*, 549 S.W.2d 927, 930 (Mo.App.1977). Cantey and Stewart, the two employees, testified that they believed Haskins had a gun and that they were afraid. In fact, Stewart fainted when the ordeal was over.

Haskins also ordered the two to lie down on the floor as he made his escape. Because the fear and intimidation that Haskins created are the force element of the robbery, it is irrelevant that he actually had no gun. *Foster*, 665 S.W.2d at 351. There was sufficient evidence to find a forcible stealing had occurred.

There was also sufficient evidence to support a finding that Blaylock "aided and encouraged Bobby Joe Haskins in committing that offense." Blaylock parked his car in the driveway and waited there while Haskins entered and robbed the store. Blaylock's car was seen and recognized leaving the area after the robbery and was followed by the customer who had seen Haskins running toward the car. When the police stopped the described car, Haskins and Blaylock were identified. In Blaylock's oral statement to the police, he admitted he had been aware of Haskins' plan to rob the store. In a similar situation, this court has stated, "Participation of the accused before, during or after [the] commission of the offense is sufficient. Aider participation is proven if it appears that the defendant waited in a vehicle and assisted the perpetrators of the crime in making their escape." *State v. Briscoe*, 646 S.W.2d 424, 428 (Mo.App.1983); *See, State v. Carr*, 659 S.W.2d 275, 276 (Mo.App. 1983).

■ Blaylock next asserts the court erred in failing to grant his mistrial requests when (1) the state elicited testimony that a .20 gauge shotgun, the subject of a motion in limine, had been found in Blaylock's car and (2) Cantey voluntarily stated that the store manager had told him Blaylock had been in the store earlier that day. In the sole reference to the shotgun, the state questioned Officer Woodson about his search of Blaylock's automobile, and, specifically, asked if he had found any weapons. Woodson said he had found a shotgun, whereupon defense counsel objected, the objection was sustained, and the jury was instructed to disregard. During defense counsel's cross-examination of Cantey, Cantey voluntarily stated that the

manager had told him Blaylock had been in the store earlier that day. This testimony was not repeated nor alluded to again. Defense counsel objected to the hearsay, the court sustained the objection, and instructed the jury to disregard. In neither instance did the court grant Blaylock's mistrial requests.

The court did not abuse its discretion in failing to grant a mistrial in these instances. *Briscoe*, 646 S.W.2d at 426. A mistrial is a drastic remedy only to be granted under extraordinary circumstances. *State v. Jordan*, 672 S.W.2d 152, 154 (Mo.App. 1984); *State v. Rogers*, 651 S.W.2d 591, 594 (Mo.App.1983). The statements were made only once and the court properly limited any prejudicial effect they may have had, by sustaining the objections and instructing the jury to disregard.

■ Blaylock further asserts the trial court erred in not suppressing his oral statements to the police because the state failed to first prove the *corpus delicti* of second degree robbery and because it did not establish a valid waiver of rights. As noted, *supra*, there was ample evidence, independent of Blaylock's statements to the police, to establish the *corpus delicti* of the offense. *State v. Davison*, 668 S.W.2d 252, 254 (Mo.App.1984); *State v. Charity*, 587 S.W.2d 350, 353 (Mo.App.1979). Blaylock's assertion that no valid waiver of rights was shown is premised on the lack of a specific provision on the *Miranda* warning card for a waiver of rights. Because the voluntariness of a statement is *prima facie* established by showing that, at all stages of the interrogation, the defendant is informed of his rights, he understands those rights, and no threats, promises or coercion are used in obtaining the statement, *State v. Carroll*, 562 S.W.2d 772, 773 (Mo.App.1978), i.e., that the confession is a product of his free will, *State v. Buckles*, 636 S.W.2d 914, 923 (Mo. banc 1982), Blaylock's assertion is inapposite and unsupported by the evidence. The officers who interrogated Blaylock testified that, before the interrogations began, he was read the *Miranda* warnings, signed them,

and indicated he understood them. They further testified that they used no threats, promises, or any coercive means to obtain his statements. Blaylock himself testified that, prior to the interrogations, the officers read him the *Miranda* warnings, that he understood them, and that he was not coerced in any way. Thus, the state made a *prima facie* case of voluntariness unrebutted by the defense.

Blaylock also asserts the court erred in limiting and denying his cross-examination of a deputy about the deputy's alleged drug transactions with a police informant in an unrelated case. The state's objections, based on improper impeachment on a collateral matter and a violation of a pre-trial order requiring that a prior offer of proof be made, were sustained. Contrary to Blaylock's assertions, the court later allowed him to make an offer of proof, but it adhered to its earlier ruling.

The court did not err in limiting the scope of cross-examination in this case. *State v. Hires*, 583 S.W.2d 204, 206 (Mo. App.1979); *Traveler's Indem. Co. v. Woods*, 663 S.W.2d 392, 399 (Mo.App.1983). First, in a pre-trial order, the court explicitly stated that, prior to questioning the deputy about the drug transaction, an offer of proof would have to be made. This was not done. Second, the questions themselves were impermissible attempts to impeach the deputy, not with convictions but with intimations of possible investigations or uncharged alleged criminal activity, not resulting in convictions, on collateral matters. *State v. Smith*, 585 S.W.2d 540, 541 (Mo.App.1979).

Blaylock further asserts the court erred in denying his new trial motion, based on juror misconduct. The only evidence supporting the allegations of misconduct are the affidavits of two jurors. The state objected to the request for an evidentiary hearing on the matter. Notwithstanding the apparently egregious nature of the alleged misconduct, the settled Missouri rule is that a juror may not impeach the jury's verdict. *State v. Jones*, 661 S.W.2d 814 (Mo.App.1983); *see, Shearin v.*

*Fletcher/Mayo/Associates, Inc.*, 687 S.W.2d 198 (Mo.App.1984), Dixon, J., concurring.

Blaylock next asserts the court erred in denying his motion to dismiss the felony information filed against him because the prosecutor, Tom Williams, was improperly elected and thus lacked authority to file the information. Blaylock's assertion arises because Leffler, the elected prosecutor of Johnson County, a second-class county, stepped down from the position because of confusion about the length of term he was to serve. He then asked that a new prosecutor be appointed. In November, 1982, Johnson County held another election which Tom Williams won, thus electing him to a four year term. Blaylock asserts that, because prosecutors for second class counties may only serve for four-year terms, and Leffler had two years left on his term, the second election was void and Williams had no authority to act as prosecutor.

In ruling on a pre-trial motion alleging this point, the court stated:

5. The information was filed by Tom R. Williams, Mr. Williams was elected Prosecuting Attorney for Johnson County in a regular general election held November 2, 1982. He was certified to the Secretary of State by local election authority and was issued a commission by the Secretary of State. On the date the information was filed, Mr. Williams had not completed his term of office....

The allegation that the prosecutor was not legally elected and, therefore, had no authority to file an information cannot be addressed appropriately in this proceeding."

The court correctly found that whether Williams was properly elected, and thus had no authority to file the information against Blaylock, was not an issue to be decided in this case. There is no common law right to contest an election and the right to contest exists only as the statute defines it. *Whitener v. Turnbeau*, 602 S.W.2d 890, 894 (Mo.App.1980); *State ex*

rel. Wilson v. Hart, 583 S.W.2d 550, 551 (Mo.App.1979). Blaylock seeks to collaterally attack Williams' right to hold office. The right to hold a particular office is not subject to collateral attack. The Missouri Supreme Court rejected a substantively similar claim in State v. Tyler, 349 Mo. 167, 159 S.W.2d 777 (1942).

■ Blaylock further asserts the court erred in allowing Haskins to invoke his Fifth Amendment privilege against self-incrimination while on the stand before the jury, in denying him the opportunity to cross-examine Haskins, and in refusing to allow him to introduce Haskins' taped statement or any testimony about that prior statement. While on the stand, Haskins invoked the Fifth Amendment, and then, outside the jury's presence, clearly stated that he would refuse to answer all questions about the case, whether asked by the prosecution or the defense. Based on the record, the court did not err in allowing Haskins to invoke the Fifth Amendment on the stand.[2]

■ Blaylock's contention that the court erred in denying him the right to cross-examine Haskins is likewise without merit, when viewed in light of the record. When Haskins invoked the privilege, the state, believing Haskins to be unavailable, asked to use his deposition in evidence. Defense counsel then requested that he be allowed to extensively cross-examine Haskins, apparently because of the state's proposed use of the deposition. The court, however, refused to allow the state to use the deposition. Viewed in that posture, it cannot be said that the court erred in refusing to allow Haskins to be cross-examined, as the deposition was never adduced into evidence and Haskins had categorically refused to answer questions about the

case. There was no testimony on which to cross examine.

■ Blaylock further asserts the court erred in failing to instruct the jury on felony or misdemeanor stealing. Because the evidence established that a forcible stealing had occurred, as required for proof of the robbery offense, the evidence did not support a submission on stealing and the jury could not have been so instructed. Briscoe, 646 S.W.2d at 427–28.

■ Finally, Blaylock asserts the trial court erred in failing to disqualify the prosecutor and in failing to dismiss the amended information because of prosecutorial vindictiveness. While Blaylock asserts the prosecutor should have been disqualified because he had a personal interest in the outcome of the case, this is a conclusory allegation, unsupported by the record, which must be denied. Rule 84.04(d). Further, the court did not abuse its discretion in failing to dismiss the amended information. State v. Mason, 650 S.W.2d 15 (Mo. App.1983). Missouri Supreme Court Rule 23.08 permits the state to file an amended information, provided the amendment does not contain an additional or different charge and does not prejudice any substantial right. Since an amendment that merely applies the Second Offender Act does not contain an additional or different charge, State v. Goree, 633 S.W.2d 758, 759 (Mo.App.1982), the issue is whether the amendment prejudices defendant's substantial rights. Prejudice is established where the defense under the charge as first filed is not equally available after the amendment and where defendant's evidence is not equally applicable before and after the amendment. State v. Smith, 655 S.W.2d 745, 746 (Mo.App.1983). There is no indication here that either the proferred defense or Blaylock's evidence were in any way

2. The record reveals that at some time on the morning of trial, the prosecuting attorney learned that Haskins would invoke the Fifth Amendment if called to testify. Nowhere in his motion for a new trial does defendant allege that the state made a deliberate attempt to build its case out of inferences arising from the use of the Fifth Amendment, nor does he show that

under the circumstances, inferences arising from the witness's pleading the privilege were so critical to the state's case that he was prejudiced thereby. See Namet v. United States, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963), State v. Huffman, 659 S.W.2d 571 (Mo.App. 1983). Cf. State v. Wright, 582 S.W.2d 275 (Mo. banc 1979).

changed by the amendment. No prejudice appearing, the point is denied.

Affirmed.