**STATE of Missouri, Respondent,**

v.

**John RACCAGNO, Appellant.**

**No. 58843.**

Supreme Court of Missouri,
Division No. 1.

Dec. 24, 1975.

David Skeer, Kansas City, for appellant.

Willard B. Bunch, County Counselor, Stanley P. Christopher, Deputy County Counselor, John E. Cash, Ralph L. Martin, Pros. Atty., Robert Frager, Asst. Pros. Atty., Kansas City, for respondent.

BARDGETT, Judge.

Appellant John Raccagno was charged with the commission of a misdemeanor in that he did "unlawfully and intentionally fail to comply with the duly promulgated regulations of the Director of Revenue dealing with the collection of County Cigarette Taxes, to-wit: being then and there the person who first sells the cigarettes within the State of Missouri and in such capacity failing to affix the proper county tax stamp to a certain package of BelAir Brand cigarettes sold within the County of Jackson and State of Missouri thereof . . . ." The prosecution was premised on the provisions of section 210.320, RSMo 1969 (S.B. 241 of the 75th General Assembly, 1969). Section 210.320(2) inter alia, authorizes counties of the first class with all or the greater part of a city of 350,000 or greater to impose a tax on cigarettes of two and one-half mills per cigarette sold in that county for the purpose of helping to defray the expenses of certain places of detention for delinquent or dependent children and other children's services within the county.

Jackson County, by its then governing body, the county court, did in 1969 adopt an order imposing the tax authorized by 210.-320(2). The statute requires the tax to be paid and the stamp affixed in the same manner as is provided by chapter 149. Chapter 149, the state cigarette tax law, was repealed and reenacted with some changes by Laws of Mo.1974, p. 775, 77th General Assembly, but the manner of paying the tax and affixing the stamps remained the same.

It is stipulated that appellant, a tobacco wholesaler, first sold a package of cigarettes in Jackson County upon which there was no county tax stamp. The prosecution was instituted in magistrate court and transferred to the circuit court of Jackson County because appellant raised the defense that the enabling act, section 210.320, was unconstitutional. Appellant was found guilty of a misdemeanor by the circuit court

where the case was tried without a jury; imposition of sentence was suspended, and appellant was placed on probation for a period of thirty days.

The appellant asserted numerous objections to the validity of the statute on constitutional grounds in the lower courts and has maintained his constitutional objections throughout the proceedings. Additionally, section 210.320, insofar as it authorizes a tax, is a revenue law of this state. This court has jurisdiction of the appeal, Art. V, sec. 3, Mo.Const., as amended 1970.

This is not a declaratory judgment case but rather an appeal from a criminal conviction and the relief sought is a reversal of that conviction.

The penalty provision of section 210.320 is found in subsection 6 thereof. It provides: *"The director of revenue of this state shall promulgate reasonable and necessary regulations for the collection of this tax and any violation of such regulation is a misdemeanor and any person convicted of such a misdemeanor shall be punished by law."* (Emphasis supplied.)

Under section 556.270 the appellant was subject to being punished by imprisonment in a county jail not exceeding one year, or by a fine not exceeding one thousand dollars, or by both such fine and imprisonment.

The information upon which appellant was prosecuted shows on its face that appellant was charged with a violation of a *regulation* promulgated by the director of revenue. The penalty section of 210.320(6) makes the violation of a *regulation* a misdemeanor. That provision, section 210.320(6), does not make the violation of the statute itself a misdemeanor, nor does it provide that the violation of the statute itself is to be the subject of any criminal prosecution.

The appellant contends, inter alia, that the director of revenue did not promulgate regulations under the authority of section 210.320 and that, assuming regulations were promulgated, section 210.320(6) constituted an unconstitutional delegation of power by the general assembly in that it allowed the director of revenue to decide what acts will constitute a criminal offense.

In November 1969 the director of revenue of Missouri prescribed "Rules and Regulations covering Tax on Sale of Cigarettes". The first paragraph of this document states, "Pursuant to authority vested in the Collector of Revenue by Chapter 149, RSMo., the following Rules and Regulations, effective November 17, 1969, are hereby adopted. These Rules and Regulations supersede and cancel all previous Rules and Regulations issued by this Division under such authority."

Chapter 149, referred to in the director's regulations supra as the authority for the regulations, was the state statute imposing a statewide cigarette tax and not a county cigarette tax. Specifically, chapter 149 does not deal with the cigarette tax authorized by section 210.320(2) to be imposed only by first-class counties with all or the greater part of a city of 350,000 or more. The body of the document does make reference to a situation where a combination of state, city or county cigarette taxes are involved and also provides, "Wholesalers must use Pitney-Bowes red ink only to stamp *state* meter impressions and Pitney-Bowes black ink only to stamp dual meter (city and state) impressions on packages of cigarettes, blue ink only to stamp impressions on packages of cigarettes for St. Louis County, green ink only to stamp impressions on packages of cigarettes for Jackson County, and purple ink only to stamp impressions on packages of cigarettes for Kansas City North (Clay County). Any violation of stamping with the incorrect color of ink will be sufficient cause for revocation of permission to use meters." These regulations were filed in the secretary of state's office.

Nowhere do these regulations make reference to nor do they purport on their face to have been adopted pursuant to section 210.320(6), the statutory authority for the adoption of rules and regulations, refer-

ence the specific tax authorized by section 210.320(2). Yet these regulations, under the state's theory, take on the aspect of a criminal statute for it was the violation of a *regulation* that was the basis of this criminal prosecution and conviction. The most that can be said with reference to whether or not the regulations noted supra were adopted pursuant to section 210.320 is that it is doubtful. As such, it becomes subject to the familiar principle that a criminal statute must be strictly construed against the state and in favor of the defendant, *State v. Harper,* 510 S.W.2d 749, 751 (Mo. App.1974), and cases therein cited. Upon that basis, this conviction cannot stand. However, to reverse solely on that basis would undoubtedly result in the adoption of regulations by the director of revenue of Missouri pursuant to section 210.320(6) and the filing of same with the secretary of state followed by other criminal prosecutions for the violation of such regulations.

Therefore, the court will now decide whether the delegation by the legislature as set forth in section 210.320(6) was unconstitutional.

First it is noted that the legislature did not make the violation of any of the provisions of section 210.320 a criminal offense. Section 210.320(6) left it to the director of revenue to promulgate reasonable and necessary regulations and make the *violation* of a *regulation the* criminal offense. As such, the statute delegated the power to the director of revenue to say whether or not the failure to pay the tax authorized by section 210.320 would be criminally punishable. If the director does not promulgate a *regulation* requiring the tax to be paid by the person first selling the cigarettes in Jackson County, then the sale of the cigarettes without first paying the tax is not criminally punishable because not required by a regulation.

As such, it is clear that section 210.320(6) leaves it to the discretion of the director of revenue to specify by regulation what act or conduct on the part of a citizen shall constitute a criminal offense.

This is particularly apparent in the instant case because here the legislature did not even specify that a violation of the statute itself constituted a criminal offense.

The state argues in its brief as follows:

"It must here be observed that appellant is not charged with violating some exotic, irrelevant and arbitrary regulation promulgated by the Director of Revenue. If appellant had paid the tax, purchased stamps and generally complied with the substance of the law but simply applied the stamp backwards, upside down or in some other respect violated a technical and minor regulation, then his complaint would have merit and he would not and could not have been convicted of violating this statute.

"Appellant herein intentionally disregarded the very substance of the statute, to-wit, the tax itself . . .

"Appellant however complains of the obviously procedural wording of both the statute and the body of the information, which clearly followed the language of the statute.

"The General Assembly did, in fact, determine what acts were criminal, to-wit: the intentional failure and refusal to pay the tax, and the punishment therefrom resulting.

"Since appellant has been charged and found guilty of violating the substance and heart of the statute, to-wit: the tax, he should not be allowed and cannot legally complain of what might exist under a theoretical and clearly non-existent set of facts."

The fallacy of the state's position is that, by the terms of the statute itself, the legislature did not make the violation of the "substance and heart of the statute, to-wit: the tax" a criminal act. If that act is a crime, it is because it violates a regulation and not because it violates the law itself, according to section 210.320(6). Furthermore, the state's argument is somewhat self-defeating for under section 210.320(6)

the violation of *any* regulation—technical, minor, or major—is a criminal offense.

The issue in this case is not so much whether the regulations were administratively reasonable and necessary from the standpoint of collecting the tax but rather involves the fundamental power to make an act a criminal offense. It can be refined by asking the question: Did the legislature mandate by law that the failure to pay the tax—comply with the law—would be a criminal offense? While it would not seem reasonable to say the legislature intended that a violation of the law would not be a misdemeanor but a violation of a regulation would be; yet, at a minimum, it clearly appears that the legislature did leave the decision as to whether or not a violation of any specific provision of the law would constitute a criminal offense to the director of revenue. He was to exercise this power by promulgating regulations requiring or prescribing certain acts to be done or not done. Although the limitation of "reasonable and necessary for the collection of this tax" may be sufficient to circumscribe the director's discretion in promulgating procedural regulations, it is no restriction whatever when the question is whether or not to make the noncompliance a criminal act. It is the delegation of power to the director that allows him to decide what, if anything, will constitute the criminal act that is the vice of this statute.

In *State v. Bridges,* 398 S.W.2d 1, 5 (Mo. banc 1966), this court upheld the authority of the division of health to identify and file a list of stimulant drugs, the possession of which constituted a criminal offense. But there the legislature defined "stimulant" drug and the court held that the division was limited to listing only those drugs which fall within the statutory definition. No such restrictions on the director of revenue's description appear in section 210.-320(6).

Art. II, section 1, Mo.Const., provides for the separation of power into three distinct departments—legislative, executive, and judicial—and prohibits the exercise of power properly belonging to one of those departments from being exercised by another. The department of revenue is part of the executive branch of our government.

█ It is fundamental that to declare what shall constitute a crime and the punishment therefor is a power vested solely in the legislature and may not be delegated to any other body or agency. 1 Am.Jur.2d, Administrative Law, section 127, p. 938.

Respondent has not cited any case or other authority dealing with the type of penalty clause found in section 210.320(6), and there appear to be no Missouri cases directly in point.

In *Casey v. Colorado,* 139 Colo. 89, 336 P.2d 308 (banc 1959), Casey was prosecuted for violation of a regulation in that he failed to secure a trailer-court license. This prosecution was based on the failure of Casey to comply with rules and regulations of the board of health. The regulation was adopted by the board of health pursuant to a statute which authorized the board of health to adopt rules and regulations and provided that the violation of any such rules and regulations shall be a misdemeanor subject to a fine or imprisonment or both.

The court held the statute, insofar as it delegated to the executive department the power to define a crime, violative of Art. III of the Colorado constitution. Art. III of the Colorado constitution is virtually the same as Art. II, section 1, of the Missouri constitution.

In *Bacus v. Lake County,* 138 Mont. 69, 354 P.2d 1056 (1960), the court held a provision of a statute which provided that a violation of the rules or regulations adopted pursuant to a statute shall be punished by a fine or imprisonment not exceeding ninety days violated the nondelegation-of-powers provision of Art. IV, section 1, of the Mon-

tana constitution. Again, Art. IV, section 1, of the Montana constitution is virtually the same as Art. II, section 1, of the Missouri constitution.

The court holds the provision of section 210.320(6), which provides "and any violation of such regulation is a misdemeanor and any person convicted of such a misdemeanor shall be punished by law", constitutes an attempt to delegate legislative power to an administrative agency and as such violates Art. II, section 1, of the Missouri constitution.

The court considers this to be a narrow but fundamental decision. The court holds that under our constitution the legislature cannot delegate to an administrative agency the power to determine whether or not a specific act is to be criminally punishable.

As noted supra, this is a criminal appeal and the relief sought is a reversal of the appellant's conviction. In view of the holding set forth supra, it is not necessary to reach the other contentions made by appellant.

The judgment is reversed and the appellant discharged.

HOLMAN, P. J., and SEILER, C. J., concur.

DONNELLY, J., not a member of division when cause was submitted.