STATE of Missouri, Appellant,

v.

Irving E. THOMPSON, Respondent.

No. 62446.

Supreme Court of Missouri,
En Banc.

Feb. 9, 1982.

John Ashcroft, Atty. Gen., John C. Reed, Asst. Atty. Gen., Jefferson City, for appellant.

James M. Martin, St. Louis, for respondent.

HIGGINS, Judge.

This appeal under Rule 30.02 and § 547.-210, RSMo 1978, charges error to dismissal of the information as insufficient. Irving E. Thompson was charged by the State of Missouri with illegal possession of pentazocine,[1] a schedule IV controlled substance, in violation of § 195.240, RSMo 1978. The trial court ruled that § 195.015.4, RSMo 1978, the section under which pentazocine was placed on the schedule IV list of controlled substances, is "an unconstitutional and illegal delegation of power by the Missouri General Assembly" because it "provides for the inclusion of substances as 'controlled substance drugs' automatically if controlled by the Federal Government." Reversed.

The Drug Enforcement Administration, United States Department of Justice, published a final order placing pentazocine on the list of controlled substances in schedule IV, 44 Fed.Reg. 7–2169 (January 10, 1979). In response, the Bureau of Narcotics and Dangerous Drugs, Missouri Division of Health, amended the schedules of controlled substances by a rule which recognized the federal action and indicated that the Missouri Division of Health did not object to the controlling of the substance, and thus, pursuant to § 195.015.4, RSMo 1978, pentazocine was similarly controlled in this state, effective February 9, 1979. 4 Mo.Reg. 3–251 (March 1, 1979). On September 18, 1979, the state filed the information in question. A trial was conducted and the respondent was found guilty by a jury; the trial court sustained respondent's motion for a new trial. Thereafter, respondent filed a motion to dismiss alleging that § 195.015.4 was an unconstitutional and illegal delegation of powers in violation of art. II, § 1, and art. III, § 1 of the Missouri Constitution; the trial court sustained respondent's motion.

Section 195.015.4, RSMo 1978 provides:

If any substance is designated, rescheduled, or deleted as a controlled substance

---

1. This substance is also known as Talwin.

under federal law[2] and notice thereof is given to the division of health, the division of health shall similarly control the substance under sections 195.010 to 195.-320 after the expiration of thirty days from publication in the federal register of a final order designating a substance as a controlled substance or rescheduling or deleting a substance, unless within that thirty day period, the division of health objects to inclusion, rescheduling, or deletion. In that case, the division of health shall publish the reasons for objection and afford all interested parties an opportunity to be heard. At the conclusion of the hearing, the division of health shall publish its decision, which shall be final unless altered by statute. Upon publication of objection to inclusion, rescheduling or deletion under sections 195.010 to 195.320 by the division of health, control under sections 195.010 to 195.320 is stayed until the division of health publishes its decision.

*Id.*[3] The judgment of the trial court is examined in light of the presumed constitutionality of the statute. *State ex rel. Williams v. Marsh*, 626 S.W.2d 223 (Mo. banc 1982); *Chamberlin v. Missouri Elections Commission*, 540 S.W.2d 876 (Mo. banc 1976). Chapter 195 was adopted to establish uniformity among the controlled substance laws of Missouri and other states and between these state and federal laws, *see* notes 1 and 2. Convictions for the possession, delivery, sale, and utterance of forged prescriptions for substances controlled pur-

suant to § 195.015.4, RSMo 1978 have been affirmed. *E.g. Selvey v. State*, 578 S.W.2d 64 (Mo.App.1979); *State v. Harris*, 564 S.W.2d 561 (Mo.App.1978); *State v. Holden*, 548 S.W.2d 194 (Mo.App.1977); *State v. Williams*, 546 S.W.2d 533 (Mo.App.1977); *State v. Winters*, 525 S.W.2d 417 (Mo.App. 1975); *State v. Mulkey*, 523 S.W.2d 145 (Mo.App.1975).[4]

## I.

Article II, § 1, Mo.Const. provides:

The powers of government shall be divided into three distinct departments—the legislative, executive, and judicial—each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this constitution expressly directed or permitted.

Article III, § 1, Mo.Const. provides:

The legislative power shall be vested in a senate and house of representatives to be styled "The General Assembly of the State of Missouri."

In *State v. Bridges*, 398 S.W.2d 1, 5 (Mo. banc 1966), this Court held, "that an enactment which delegates authority is constitutional if a definite standard is provided and no arbitrary discretion is involved." In response to a charge of unlawful delegation of power, this Court upheld the former sys-

---

2. The authority and criteria for classification of substances in the federal system can be found in 21 U.S.C. §§ 811 and 812, which delegates to the Attorney General the authority to add or to transfer between schedules any drug or substance upon making certain findings. The factors set out in § 195.015.1, RSMo 1978, are substantially similar to those set out in 21 U.S.C. § 811(C), and factors set out in § 195.-017.7, RSMo 1978, (for listing a substance in schedule IV) are substantially similar to those in 21 U.S.C. § 812(b)(4). The federal system of delegation to the Attorney General has been upheld in several cases. *See, United States v. Barron*, 594 F.2d 1345, 1352 (10th Cir. 1979), *cert. denied*, 441 U.S. 951, 99 S.Ct. 2180, 60 L.Ed.2d 1056 (1979).

3. This section as well as the remainder of Chapter 195, RSMo 1978, is similar to that found in the Uniform Controlled Substances Act. 9 Uniform Laws Annotated, Master Ed. § 201(d) (1978). The act has been adopted in whole or part by forty-five states. *Id.* at 35. 1981 Supp.

4. With the exception of *Selvey v. State*, 578 S.W.2d 64 (Mo.App.1979), no properly preserved "non-delegation" attack on § 195.015.4, RSMo 1978 has been made. *See, State v. Harris*, 564 S.W.2d 561 (Mo.App.1978). In *Selvey v. State, supra*, the court held that no improper delegation of legislative power was demonstrated where a substance was rescheduled pursuant to § 195.015.4, RSMo 1978.

tem under which the Division of Health was authorized to identify and list drugs, the possession of which was criminal. This Court found the statutory definitions sufficiently specific to safeguard against the exercise of arbitrary discretion. *Id.*

Respondent asserts that § 195.015, RSMo 1978 "provides substantial standards for the guidance of its administrative body until we come to section 4, which avoids the hearing, consideration and findings section by subdelegating the authority to the Federal Government" and "that the automatic inclusion of substances by inaction of the Missouri agency avoids the legislative safeguards and guidelines for control over the power to make acts a crime." In his view, § 195.015.4, RSMo 1978 requires the automatic control of substances by the Division of Health once controlled by the federal government regardless of how the substances would be viewed under the considerations listed in § 195.015.1, RSMo 1978.[5] It is asserted that two unlawful delegations in violation of art. II, § 1 result from this automatic functioning: the control of substances by mere Division of Health inaction, and thus without any statutory guidelines, definition, or limits on discretion in violation of *State v. Bridges, supra* ; and the delegation of state legislative power to a federal agency.

■ Respondent's position overlooks the role which the Division of Health is statutorily given. Upon receiving notice of the federal control if it does not object, "the division of Health shall similarly control the substance under sections 195.010 to 195.030

.... " Section 195.015.4, RSMo 1978. When a substance is federally controlled, the Division of Health is to act affirmatively in a similar manner unless within thirty days it objects to the federal action. *Id.* At a minimum, this requires the agency to decide whether to object, and if not, to control similarly the substance in Missouri by issuance of an order. *See,* § 195.015.2, RSMo 1978. In this case, the Division of Health controlled pentazocine by issuing an Order of Rulemaking stating that it "did not object to the scheduling of this substance in the Controlled Substance List in Missouri and, therefore, this substance is similarly controlled in Missouri .... " 4 Mo.Reg. 3–251 (March 1, 1979). Absent a contrary showing, there is a presumption of regularity of agency action and thus that the Division of Health exercised and acted within the limits of the authority conferred on it. 73 C.J.S. Public Administrative Bodies and Procedure § 63 (1951); *See, U. S. v. Rucker,* 435 F.2d 950, 952–53 (8th Cir. 1971); *Moore v. Board of Education,* 547 S.W.2d 188, 191–92 (Mo.App.1977). The Order of Rulemaking coupled with this presumption indicates that the Division of Health acted affirmatively in controlling pentazocine pursuant to § 195.015.4, RSMo 1978.

■ Respondent relies on *State v. Dougall,* 89 Wash.2d 118, 570 P.2d 135 (banc 1977)[6] where the Supreme Court of Washington held a significantly different statute to be an unconstitutional delegation. In that case, the statute provided;

(d) If any substance is designated, rescheduled, or deleted as a controlled substance under federal law and notice

5. Section 195.015.1, RSMo 1978 provides:

The division of health shall administer sections 195.010 to 195.320 and may add substances to the schedules after public notice and hearing. In making a determination regarding a substance, the division of health shall consider the following:

(1) the actual or relative potential for abuse;

(2) the scientific evidence of its pharmacological effect, if known;

(3) the state of current scientific knowledge regarding the substance;

(4) the history and current pattern of abuse;

(5) the scope, duration, and significance of abuse;

(6) the risk to the public health;

(7) the potential of the substance to produce psychic or physiological dependence liability; and

(8) whether the substance is an immediate precursor of a substance already controlled under sections 195.010 to 195.320."

6. Respondent also relies on *Howell v. State,* 300 So.2d 774 (Miss. banc 1974). That case reached an opposite conclusion to this Court's decision in *State v. Bridges,* 398 S.W.2d 1 (Mo. banc 1966), and is therefore not persuasive.

thereof is given to the board the substance shall be similarly controlled under this chapter after the expiration of thirty days from publication in the Federal Register of a final order designating a substance as a controlled substance .... 69.50.201(d) RCWash. 1974. The Washington Court found:

Where, as here, the Board does not object to the federal act of designating or rescheduling a substance, it becomes controlled after 30 days by reason of the Board's inaction or acquiescence in the final publication in the Federal Register. Once a substance has become controlled, a legislatively prescribed criminal penalty is imposed for its misuse. . Consequently, a substance that is newly designed or rescheduled as a controlled substance by publication in the Federal Register becomes the criminal law of this state without appearing in either a state statute or the state administrative code ....

*Id.* 570 P.2d at 137. The court held this to be unconstitutional because "it permits future federal designation ... of controlled substances in the Federal Register to become controlled by Board inaction or acquiescence." *Id.* at 138.[7] The difference in this case is that § 195.015.4, RSMo 1978 does not by itself control substances after the thirtieth day from the date of the federal government's final notice of control. It is the Division of Health, not a federal agency, which schedules a substance in Missouri. Section 195.015.1, RSMo 1978, note 4. Research of other jurisdictions has revealed two cases which considered statutes mandating control by the state agency and otherwise analogous to § 195.015.4, RSMo 1978. In both, the statutes were upheld as constitutional delegations of authority. *Ex parte McCurley*, 390 So.2d 25 (Ala.1980); *State v. King*, 257 N.W.2d 693 (Minn.1977). The logic of these cases compared to those cited by respondent demonstrate an important difference between statutes which state "the substance shall be controlled"

and those which state "the state agency shall similarly control" the substance. Because a substance can be controlled pursuant to § 195.015.4, RSMo 1978, only if the Division of Health decides not to object and issues a rule controlling the substance, no delegation of power to control substances in Missouri has been delegated to the federal government.

■ The question remains whether the authority granted the division to list controlled substances is an unlawful delegation for failure to delineate standards or definitions in § 195.015.4, RSMo 1978. Respondent asserts that the federal action is the sole consideration for controlling a substance under § 195.015.4, RSMo 1978, and thus violates the principles set forth in *State v. Bridges, supra*. This argument ignores the reference to controlling "the substance under sections 195.010 to 195.320" found in § 195.015.4, RSMo 1978. This language and the doctrine of *in pari materia* indicate that this section is to be viewed as part of the entire statutory scheme of Chapter 195. *See ex., City of Raytown v. Danforth*, 560 S.W.2d 846 (Mo. banc 1977).

In § 195.015.1, RSMo 1978, eight specific factors are expressed as mandatory considerations "In making a determination regarding a substance ...." *Id.* In order to classify a substance into schedule IV, three additional findings must be made by the division. Section 195.017.7, RSMo 1978. These standards are sufficiently definite to meet the requirements of art. II, § 1 as delineated in *State v. Bridges, supra. See, State v. Davis*, 450 S.W.2d 168 (Mo.1970); *See also, State v. Kellogg*, 98 Idaho 541, 568 P.2d 514 (1977); *People v. Uriel*, 76 Mich. App. 102, 255 N.W.2d 788 (1977); *Montoya v. O'Toole*, 94 N.M. 303, 610 P.2d 190 (1980); *State v. Edwards*, 572 S.W.2d 917 (Tenn. 1978). Respondent's reliance on *State v. Raccagno*, 530 S.W.2d 699 (Mo.1975) is misplaced because in that case no statutory standards or restrictions existed in the revenue statute. In *State v. Raccagno, supra*,

7. *See State v. Rodrigues*, 379 So.2d 1084 (La. banc 1980) for another "automatic control" statute held to be an unconstitutional delegation. The statute considered there is substantially different from Missouri's statute.

this Court expressly distinguished *State v. Bridges, supra.*

Control by the federal government is the factor which triggers mandatory consideration of a substance by the Division of Health under § 195.015.4, RSMo 1978. Whether federal control should mandate consideration of a substance is a decision for the General Assembly. It is not for this Court to question the wisdom of that determination lest it violate art. II, § 1 of the Missouri Constitution itself. It is noted, however, that good reasons exist for the legislature's action and they must be considered when construing a statute. *State v. Kraus,* 530 S.W.2d 684 (Mo. banc 1975). The legislature is not constantly in session, and, therefore, even if its members were all trained chemists and pharmacists, it is impossible for them to keep abreast of the constantly changing drugs and medications and their inherent dangers. In *Field v. Clark,* 143 U.S. 649, 694, 12 S.Ct. 495, 505, 36 L.Ed. 294 (1892), the Supreme Court of the United States said:

> The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend which cannot be known to the lawmaking power, and must therefore be a subject of inquiry and determination outside of the halls of legislation.

Through § 195.015.4, RSMo 1978, the legislature indicates that if it had the time and expertise it would control all substances controlled by the federal government, unless a contrary reason existed.[8] *See, State v. Kellogg, supra.* This is supported by the General Assembly's adoption of the same scheduling consideration found in the federal law. *See* note 1, *supra.*

---

**8.** Whether the Missouri Division of Health can or should be expected to work as contemporaneously and efficiently as the federal agency is for the General Assembly to determine. It is noted that § 195.015, RSMo 1978 provides that the state and federal actions work in tandem.

## II.

Respondent also asserts that his rights to due process of law were violated by a lack of notice that pentazocine was scheduled as a controlled substance in Missouri and therefore that his possession of it was criminal. He asserts the Federal Register afforded the only notice of control at the time of his offense and that this constitutes insufficient notice.

Respondent did not present this contention in his motion to dismiss prior to his retrial. In granting dismissal, the trial court did not rule on this ground. A constitutional question must be raised at the earliest possible moment, otherwise it is waived. *Meadowbrook Country Club v. Davis,* 384 S.W.2d 611 (Mo.1964). Appeal lies only from a final judgment. Section 512.020, RSMo 1978; *Wilson v. Hungate,* 434 S.W.2d 580 (Mo.1968). The record reveals, however, a lack of foundation for respondent's claim. An Order of Rulemaking stating that pentazocine was controlled in schedule IV was published in the Missouri Register on March 1, 1979. 4 Mo.Reg. 3–251.[9] The information charged that respondent possessed pentazocine on September 16, 1979, five and one-half months after the Missouri Register notice. Respondent does not claim that notice in the Missouri Register is insufficient nor does he argue that the Division of Health should have held a public hearing prior to controlling pentazocine.

The judgment is reversed and the cause is remanded for further proceedings.

DONNELLY, C. J., and RENDLEN, WELLIVER and MORGAN, JJ., concur.

BARDGETT, J., concurs in separate concurring opinion filed.

SEILER, J., concurs in separate concurring opinion of BARDGETT, J.

---

**9.** This Order of Rulemaking purports to control pentazocine retroactively to February 9, 1979. Respondent neither argues nor has he standing to attack this action.

BARDGETT, Judge, concurring.

I concur in the principal opinion in this case and regard the matter of the proper and constitutional designation of controlled substances to be of great importance to today's society. The reversal of the trial court's dismissal of the information filed charging the defendant with possession of a controlled substance is premised on a presumption of regularity by the division of health. That is to say, it is presumed the division determined that the substance met the criteria of § 195.015.1, RSMo 1978, and the criteria for class-IV schedule substances as set forth in § 195.017.7, RSMo 1978.

The general assembly can remove any doubt about the constitutionality of the designation of controlled substances in Missouri by requiring the Missouri Division of Health to make the findings required by § 195.015.1 and whatever subsection applies to the particular class or schedule by simply amending § 195.015 to require those findings when the notification of federal listing is received by the division as a prerequisite to Missouri's listing. In the meantime, the division of health could make those findings required by 195.015.1 and the subsection applicable to the particular class or schedule and record those findings in its order declaring the substance to be a controlled substance.