

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| BERNARD WILLIAMS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | WD86437 |
| | ) | |
| DORIS FALKENRATH, | ) | Filed: September 26, 2023 |
| Warden, Jefferson City | ) | |
| Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

### Original Proceeding on Petition for Writ of Habeas Corpus

### Before Writ Division: Janet Sutton, P.J., and
### Alok Ahuja and Edward R. Ardini, Jr., JJ.

In 1989, Bernard Williams was convicted of two counts of forcible rape, once count of forcible sodomy, and one count of stealing. Williams was sentenced as a Class X offender, meaning that he would have to serve 80 percent of his sentences before becoming eligible for parole consideration.

Williams filed a Petition for Writ of Habeas Corpus, arguing that he was wrongly classified as a Class X offender. He contends that the circuit court found him to be a Class X offender by improperly relying on the law in effect *at the time of his sentencing*, which differed from the law in effect *at the time of his underlying crimes*. Because Williams' parole eligibility could not be restricted under statutes enacted after the commission of his offenses, we grant Williams'

petition, and order that the underlying judgment be modified to remove the designation of Williams as a Class X offender.

## Factual Background

The facts underlying Williams' convictions are stated in detail in our opinion in his direct appeal, *State v. Williams*, 797 S.W.2d 734, 736-37 (Mo. App. W.D. 1990). In summary, on the morning of May 24, 1988, Williams broke into a home in Kansas City. Williams found a fifteen-year-old girl asleep in her bed. Williams forcibly raped and sodomized the victim multiple times. Williams also stole money and personal property from the home. He ceased his assault only when the victim's mother returned home. Williams fled, but the victim's mother and a man working nearby later identified him. The victim's mother also observed the license plate number of the vehicle Williams was driving, which had been reported stolen. Williams was arrested when police in Olathe, Kansas located the stolen vehicle two days later.

A jury found Williams guilty of two counts of forcible rape, one count of forcible sodomy, and one county of felony stealing. The circuit court found Williams to be a Class X offender. The court sentenced him to terms of imprisonment of twenty years for each of the rape and sodomy offenses, and to a term of five years' imprisonment for the stealing offense. All of the sentences were ordered to run consecutively, resulting in a total term of sixty-five years. Based on his designation as a Class X offender, Williams will be required to serve 80 percent of his sentences before becoming eligible for parole, meaning that he will not become parole-eligible until approximately 2040.

Williams appealed his convictions. Among other issues, he contended that the circuit court had erroneously classified him as a Class X offender because the records of his prior convictions were not properly authenticated, and because the State had failed to prove that he had served at least 120 days in the Department of Corrections on each prior offense. We rejected Williams' arguments, including his challenge to his Class X offender designation. *See State v. Williams*, 797 S.W.2d 734, 738-40 (Mo. App. W.D. 1990). In upholding the circuit court's designation of Williams as a Class X offender, we relied on § 558.019, RSMo Cum. Supp. 1988 – a version of the relevant statute which became effective in August 1988, *after* Williams' commission of the underlying offenses. In his direct appeal, Williams did not argue that the circuit court had erroneously relied on a later-enacted statute in classifying him as a Class X offender.

Since the affirmance of his convictions in 1990, Williams has filed multiple unsuccessful habeas corpus petitions challenging his classification as a Class X offender. Prior to 2022, he had filed three such petitions in the Circuit Court of Cole County. *See* Nos. 08AC-CC00285 (denied Dec. 4, 2008), 10AC-CC00649 (denied Jan. 14, 2011), and 14AC-CC00065 (denied June 9, 2014). He had also twice filed habeas petitions in this Court. *See* Nos. WD73724 (denied April 27, 2011), and WD76850 (denied Oct. 16, 2013). In each case, Williams proceeded *pro se*. On the two occasions in which this Court denied Williams' petitions, we did not request a response from the State, or provide any explanation for our denial of relief.

The Public Defender's Office filed a new habeas petition on Williams' behalf in the Circuit Court of Cole County on March 16, 2022. No. 22AC-

3

CC00124. The circuit court denied relief on April 18, 2023. Through counsel, Williams then filed the present petition in this Court on July 24, 2023. The Respondent, the Warden of the Jefferson City Correctional Center, filed a response to the petition on August 18, 2023. In her response, the Warden argues that Williams should be denied relief because his claim is procedurally defaulted, and because both this Court and the circuit court have previously denied habeas relief on the same claim on multiple occasions. On the merits, however, the Warden acknowledges that Williams was erroneously classified as a Class X offender under this Court's decision in *Thomas v. Kemna*, 55 S.W.3d 487 (Mo. App. W.D. 2001).

In the interest of justice, and because the issues are fully developed in the existing briefing, we dispense with further proceedings and issue our writ. *See* Rule 84.24(i) ("Whenever in the judgment of the court the procedure heretofore required would defeat the purpose of the writ, the court may dispense with such portions of the procedure as is necessary in the interest of justice.").

## Discussion

### I.

Supreme Court Rule 91.01(b) authorizes "[a]ny person restrained of liberty within this state [to] petition for a writ of habeas corpus to inquire into the cause of such restraint."

> Habeas corpus is the last judicial inquiry into the validity of a criminal conviction and serves as "a bulwark against convictions that violate fundamental fairness." To that end, Missouri law provides that a writ of habeas corpus may be issued when a person is restrained of his or her liberty in violation of the constitution or laws of the state or federal government.

4

*State ex rel. Amrine v. Roper*, 102 S.W.3d 541, 545 (Mo. 2003) (citations omitted). "Habeas proceedings are limited to determining the facial validity of a petitioner's confinement." *State ex rel. Griffin v. Denney*, 347 S.W.3d 73, 77 (Mo. 2011).

"Normally, a petitioner's failure to raise a claim in a direct appeal or in a post-conviction relief motion bars the petitioner from subsequently raising the claim in a petition for writ of habeas corpus." *Thornton v. Denney*, 467 S.W.3d 292, 295 (Mo. App. W.D. 2015) (citing *State ex rel. Zinna v. Steele*, 301 S.W.3d 510, 516 (Mo. 2010)). "This restriction can be overcome by showing a jurisdictional defect, cause and prejudice, or extraordinary circumstances where manifest injustice would occur without relief." *State ex rel. Johnson v. Vandergriff*, 668 S.W.3d 574, 576 (Mo. 2023) (citing *Amrine*, 102 S.W.3d at 546).

"Cases in which a person received a sentence greater than that permitted by law traditionally have been analyzed under the ['jurisdictional defect'] exception[ ]." *Zinna*, 301 S.W.3d at 517; *see also Clay v. Dormire*, 37 S.W.3d 214, 218 (Mo. 2000) (recognizing that the Court has authorized habeas relief for "jurisdictional" defects "where a court imposes a sentence that is in excess of that authorized by law, or where the sentencing court utilized a repealed and inapplicable statute" (citations omitted)). Claims of sentencing error do not technically involve the circuit court's "jurisdiction," however. *See J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249 (Mo. 2009). Such claims are more properly referred to as "sentencing defects," rather than "jurisdictional defects." *Thornton*, 467 S.W.3d at 296. "Whatever label is applied, however, it is settled

5

that the imposition of a sentence beyond that permitted by the applicable statute or rule may be raised by way of a writ of habeas corpus," despite the petitioner's failure to raise the claim in an earlier direct appeal or post-conviction relief proceeding. *Zinna*, 301 S.W.3d at 517.

The Warden argues that, because Williams' claim involves only his eligibility for parole, his claim does not truly challenge his *sentence*, and is not reviewable in this habeas proceeding as a "sentencing defect." We disagree. In the statute under which Williams was (erroneously) classified as a Class X offender, the General Assembly specified that "[t]he final judgment and sentence of anyone found to be . . . a class X offender shall reflect such finding." *See* § 558.019.5, RSMo. Cum. Supp. 1988. Thus, the legislature itself specified that Williams' Class X offender status would constitute part of the underlying judgment.

Moreover, in two cases, this Court has held that the precise claim that Williams raises – that he was erroneously classified as a Class X offender – constitutes a "sentencing defect" cognizable in a habeas proceeding, despite the petitioner's procedural default. *See Harry v. Kemna*, 81 S.W.3d 635, 637 (Mo. App. W.D. 2002) ("A claim that the court issued 'a sentence in excess of that authorized by law' weighs as a jurisdictional issue. . . . This is true even if the only sentencing defect is the application of Class X offender status to an otherwise proper sentence." (citations omitted)); *Thomas v. Kemna*, 55 S.W.3d 487, 490 (Mo. App. W.D. 2001) (same).

Finally, in *Johnson v. Missouri Department of Corrections*, 639 S.W.3d 1 (Mo. App. W.D. 2021), we recently held that an offender's designation as a Class

6

X offender was "part of his sentence," and the offender therefore could not receive the benefit of a 2019 statutory amendment eliminating minimum prison terms for numerous offenses.  We explained:

> Johnson's designation as a class X offender became part of his sentence and final judgment and therefore restricts his eligibility for parole.
>
> If it were true that Johnson's sentence and final judgment contained no restriction on parole eligibility, section 558.019.6 (2019) would afford him relief.  . . .  But 558.019.7 (1992) restricted eligibility for parole for "minimum prison terms" of class X offenders until the defendant served "eighty percent of his sentence."  And because Johnson's class X offender status and the specific restriction on parole eligibility became part of the "final judgment and sentence[,]" section 558.019.6 [(2019)] can have no effect on Johnson's parole eligibility because it would affect the sentence actually imposed on him by the trial court.

*Id*. at 7-8 (citation omitted).  If Williams' Class X offender status is deemed to be "part of his sentence" to deny him the benefit of later statutory changes making parole more freely available, we fail to see how the Class X designation is not "part of his sentence" when determining the availability of habeas relief.

Williams' habeas petition alleges a "sentencing defect," as that term is understood in Missouri habeas corpus jurisprudence.  Therefore, Williams' failure to raise his current claim in his direct appeal, or in a post-conviction relief motion, is no bar to relief.

## II.

Besides arguing that Williams' claim is not properly characterized as a "sentencing defect" claim, the Warden also argues that Williams' claim is foreclosed by the denial of his prior habeas petitions in the circuit court, and in this Court.  We disagree.

7

Missouri does not categorically prohibit successive habeas corpus petitions, and the earlier summary denial of a habeas petition raising the same claims does not foreclose a later grant of relief. Thus, in *State ex rel. Johnson v. Blair*, 628 S.W.3d 375 (Mo. 2021), the Missouri Supreme Court recently issued a lengthy opinion addressing the merits of an inmate's habeas claim that he was ineligible for execution due to his diminished intellectual functioning, even though it acknowledged that "[t]his Court already considered Johnson's intellectual disability claim in his 2015 petition for habeas corpus and denied relief." *Id.* at 382. Quoting *State ex rel. Nixon v. Jaynes*, 63 S.W.3d 210, 217 (Mo. 2001), the Court observed that "'[s]uccessive *habeas corpus* petitions are, as such, not barred. But the opportunities for such relief are extremely limited. A strong presumption exists . . . against claims that already have once been litigated.'" *Johnson*, 628 S.W.3d at 381.

We similarly considered the merits of a petitioner's habeas claims, although he had raised them in prior petitions, in *McKim v. Cassady*, 457 S.W.3d 831 (Mo. App. W.D. 2015). In *McKim*, we addressed the merits of the petitioner's claims even though both this Court, and the Missouri Supreme Court, had previously issued summary orders rejecting the same claims when they were asserted in earlier *pro se* petitions. We concluded that "an appellate court's or the Supreme Court's issuance of an *order* denying a petition for writ of habeas corpus is without prejudice *unless* the order of denial otherwise specifies." *Id.* at 839 (footnote omitted). Under *McKim*, the prior orders issued by this Court denying Williams' earlier, *pro se* petitions do not bar the present petition raising

8

the same claim, since the orders did not state any reasons for the denial of relief, and did not specify that the denial of relief was with prejudice.[1]

Consideration of the merits of Williams' claim is justified, despite the denial of his earlier petitions, given that – _as the Warden admits_ – he is presently serving a legally erroneous sentence, which denies him parole consideration until approximately 2040.  Missouri caselaw has consistently recognized that claims that a sentence is not statutorily authorized are entitled to consideration on the merits, despite procedural obstacles which would bar other claims.  For example, "Missouri caselaw has long recognized that '[b]eing sentenced to a punishment greater than the maximum sentence for an offense constitutes plain error resulting in manifest injustice.'" _State v. Whirley_, 666 S.W.3d 223, 229 (Mo. App. W.D. 2023) (quoting _State v. Severe_, 307 S.W.3d 640, 642 (Mo. 2010)).  Accordingly, a claim of an unauthorized sentence will be addressed on direct appeal, despite the appellant's failure to preserve the claim in the trial court.  In addition, as discussed in § I above, Missouri caselaw is well-established that a claim of an unauthorized sentence will be addressed on its merits in a habeas corpus petition, even though the petitioner procedurally defaulted the claim by failing to raise it on direct appeal or in post-conviction relief proceedings.

---

[1]    Besides the fact that it involved a successive habeas petition raising a claim that had previously been denied, in _McKim_ one of the prior writ denials had been issued by the Missouri Supreme Court.  This implicated Rule 91.22, which provides that, "[w]hen a petition for a writ of habeas corpus has been denied by a higher court, a lower court shall not issue the writ unless the order in the higher court denying the writ is without prejudice to proceeding in a lower court."  Because Williams never previously filed a habeas petition in the Supreme Court, Rule 91.22 is inapplicable here, and it is unnecessary for us to rely on that aspect of _McKim_'s holding.

At least three circumstances justify consideration of sentencing error claims, despite procedural obstacles which would bar other claims. First, a sentencing defect will be established by the governing law and on the face of the record, and the effect of the error on the complaining party will be undeniable. Such errors differ significantly from many claims of ineffective assistance of counsel, or of procedural error, which may require factual development, and whose prejudicial effect on the complainant may be uncertain. Second, an offender claiming a legally unauthorized sentence is actually experiencing the direct consequences of the erroneous sentence at the time of a later challenge.

Finally, a criminal sentence which is not authorized by statute is beyond the court's power to impose, and implicates important constitutional principles. In *State v. Whirley*, 666 S.W.3d 223, a circuit court imposed a sentence below the minimum mandated by statute. We held that this unauthorized sentence constituted plain error, and resulted in a manifest injustice which was correctible on appeal, despite the State's failure to object at the time the sentence was imposed. In doing so, we explained that, by imposing a sentence outside the range authorized by law, the circuit court had improperly assumed a legislative power:

> . . . [T]he circuit court's original judgment had the effect of ignoring the sentence which the General Assembly determined to be appropriate for a first conviction of discharging a firearm at a habitable structure. "The duty and power to define crimes and ordain punishment is exclusively vested in the Legislature." *State ex rel. Williams v. Marsh*, 626 S.W.2d 223, 235 (Mo. 1982) (citing *State v. Raccagno*, 530 S.W.2d 699, 703 (Mo. 1975)). "[O]nly the legislature – not the courts – can create crimes and authorize the punishments that will apply." *State v. Hart*, 404 S.W.3d 232, 246 n.11 (Mo. 2013) (citing *Marsh*). Article II, § 1 of the Missouri

10

Constitution "provides for the separation of power into three distinct departments – legislative, executive, and judicial – and prohibits the exercise of power properly belonging to one of those departments from being exercised by another." *Raccagno*, 530 S.W.2d at 703. Consistent with these principles, we have held that the circuit courts "ha[ve] no discretion to alter a statutorily mandated sentence." *State v. Busey*, 641 S.W.3d 282, 293 (Mo. App. W.D. 2021). If we were to leave the error in the original judgment uncorrected, this would effectively arrogate to the courts the power to define the range of punishment for Whirley's offense, disregarding the legislature's contrary mandate.

*Id.* at 230-31.

In her response to the petition, the Warden contends that Williams is relying on "a shift in case law," and is essentially arguing that "his claims have improved with age" based on "new cases." The Warden argues that this Court should refuse to "reevaluate post-conviction claims every time a new opinion is published." What the Warden ignores, however, is that the Missouri Supreme Court unambiguously held – *before Williams was convicted or sentenced* – that post-offense changes to § 558.019, RSMo could not restrict an offender's eligibility for parole, because to do so would violate the constitutional prohibition on *ex post facto* laws. *State v. Lawhorn*, 762 S.W.2d 820, 824–25 (Mo. 1988). Moreover, as we discuss more fully in § III below, a series of decisions from this Court had specifically held – prior to Williams' convictions – that later amendments to the statutes governing Class X offender status could not be applied to pre-amendment crimes. The caselaw pre-dating Williams' convictions addressed amendments to the precise statute under which Williams was erroneously found to be a Class X offender, and applied the precise legal principle on which Williams now relies. Unfortunately, neither the prosecution nor the defense alerted the sentencing court to *Lawhorn* or to the relevant Court of

11

Appeals cases, and to their implications for the State's claim that Williams was a Class X offender. While it is regrettable that this issue was not raised and resolved prior to Williams' sentencing, this is not a case in which we apply later legal developments retrospectively to Williams' case.

For all of these reasons, we conclude that the denial of Williams' earlier, *pro se* habeas petitions does not bar our consideration of his sentencing error claim in this proceeding.

## III.

Turning to the merits, it is clear that Williams could not have been classified as a Class X offender under the statutes in effect at the time he committed his crimes on May 24, 1988.

At the time of Williams' crimes, § 558.019, RSMo 1986 provided that class X treatment only applied to persons convicted of class A or class B felonies. Section 558.019, RSMo 1986 provided in relevant part:

> 2. The provisions of this section shall be applicable only to class A and B felonies committed under the following Missouri laws: chapters 195, 491, 565, 566, 567, 568, 569, 570, 571, 573, 575, RSMo. Other provisions of the law to the contrary notwithstanding, any defendant who has pleaded guilty to or has been found guilty of a felony and served time of imprisonment of not less than one hundred twenty days in the department of corrections and human resources . . . shall be required to serve the following minimum prison terms:
>
> . . . .
>
> (3) If the defendant is a class X offender, the minimum prison term which the defendant must serve shall be eighty percent of his sentence.
>
> . . . .

4. For the purpose of determining the minimum prison term to be served, the following calculators and definitions shall apply:

. . . .

(3) A "**class X offender**" is one who has previously pleaded guilty to or has been found guilty of three felonies committed at different times . . . .

5. . . . The final judgment and sentence of anyone found to be a prior offender, a persistent offender, or a class X offender shall reflect such finding.

. . . .

7. For purposes of this section, the term "**minimum prison term**" shall mean time required to be served by the defendant before he is eligible for probation, parole, conditional release or other early release by the department of corrections and human resources.

At the time of Williams' crimes in May 1988, none of his offenses constituted class A or class B felonies. Williams was convicted of forcible rape under § 566.030, RSMo 1986. The statute provided in relevant part:

1. A person commits the crime of forcible rape if he has sexual intercourse with another person to whom he is not married, without that person's consent by the use of forcible compulsion.

2. Forcible rape or an attempt to commit forcible rape as described in subsection 1 of this section or rape as described in subsection 3 of this section is a felony for which the authorized term of imprisonment, including both prison and conditional terms, is life imprisonment or a term of years not less than five years, unless in the course thereof the actor inflicts serious physical injury on any person, displays a deadly weapon or dangerous instrument in a threatening manner or subjects the victim to sexual intercourse or deviate sexual intercourse with more than one person, in which cases forcible rape or an attempt to commit forcible rape is a class A felony.

Williams was convicted of forcible sodomy under § 566.060, RSMo 1986, which contained identical provisions specifying the range of punishment, and the circumstances in which the offense would be considered a class A felony.

The State did not allege that circumstances existed which would make Williams' sex offenses class A felonies. Thus, Williams was not charged with inflicting serious physical injury on his victim, displaying a deadly weapon or dangerous instrument, or subjecting the victim to sexual assault by more than one perpetrator. Therefore, his forcible rape and forcible sodomy offenses were not class A felonies, but were instead considered unclassified felonies, and Williams accordingly could not be punished for those offenses as a Class X offender under § 558.019, RSMo 1986. *Thomas*, 55 S.W.3d at 490-91. In addition, Williams' offense of felony stealing, by stealing property valued at $150 or more, was classified as a class C felony under § 570.030.3(1), RSMo 1986. Williams could not be punished as a Class X offender for *that* offense, either.

In 1988, the General Assembly changed the relevant statutes so that Williams' forcible rape and forcible sodomy offenses would subject him to punishment as a Class X offender, for two separate reasons. *See* H.B. 1340, 84th Gen. Assembly, 2d Reg. Session, 1988 MO. LAWS 984. First, the legislature amended § 557.021, so that Williams' forcible rape and forcible sodomy offenses would now be considered class A felonies, because the authorized punishment for each offense included "life imprisonment or imprisonment for a term of twenty years or more." § 557.021.3(1)(a), RSMo Cum. Supp. 1988. Second, House Bill 1340 amended § 558.019, so that punishment as a Class X offender now extended to "dangerous felonies as defined in subdivision (8) of section 556.061, RSMo."

14

§ 558.019.2, RSMo Cum. Supp. 1988.  Both forcible rape and forcible sodomy constituted "dangerous felonies" at the relevant time.  *See* § 556.061(8), RSMo 1986.

The 1988 statutory amendments became effective in August 1988 – *after* Williams committed his crimes.  Even though Williams would be subject to punishment as a Class X offender under the 1988 amendments, those amendments could not constitutionally be applied to him.  *State v. Lawhorn*, 762 S.W.2d 820 (Mo. 1988), was a case in which § 558.019, RSMo was amended after an offender committed his crimes, to increase the minimum prison term before parole eligibility from 33 percent to 40 percent of the offender's sentence.  The Supreme Court held that extending the offender's minimum prison term, *after* the commission of his crimes, constituted an *ex post facto* law violating Article I, § 10 of the United States Constitution, and Article I, § 13 of the Missouri Constitution.  The Court explained:

> In *Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987), the United States Supreme Court held that a change in the law causing a defendant to be subjected to a longer prison term was an *ex post facto* law when applied to a defendant whose offense predated the law. . . .
>
> . . . .
>
> . . . *Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974), holds that parole eligibility is an element of a criminal sentence.  *Maggard v. Moore*, 613 F.Supp. 150, 152 (W.D. Mo. 1985), holds that parole eligibility is part of the punishment for a crime and retroactive changes in eligibility to the disadvantage of a defendant may, in some cases, violate the *ex post facto* clause.  And *Yamamoto v. U.S. Parole Commission*, 794 F.2d 1295, 1300 (8th Cir. 1986), holds that adverse

15

changes in the time at which a prisoner becomes eligible for parole consideration may violate the *ex post facto* clause.

Although appellant's right to parole is not certain under the old law, under the new statute the parole board is precluded from exercising its discretion until a certain period of time has passed. Thus, appellant has been deprived of any possibility of parole until he has served forty percent of his sentence. This is clearly a change in the law which disadvantages appellant.

We conclude that the trial court erred when it sentenced appellant as a prior offender under Section 558.019.

762 S.W.2d at 825, 826; *see also State v. Stepter*, 794 S.W.2d 649, 656 (Mo. 1990) (following *Lawhorn*, and likewise holding that post-offense amendments to § 558.019, RSMo could not be applied to earlier crimes).[2]

Based on reasoning identical to *Lawhorn*, this Court held that statutory changes to Class X offender status could not be applied to individuals whose offenses pre-dated the statutory amendments, if the effect of the changes would be to increase the offender's period of parole ineligibility. *See Collins v. State*, 887 S.W.2d 442, 443 (Mo. App. W.D. 1994); *State v. Pruitt*, 755 S.W.2d 309, 314 (Mo. App. E.D. 1988); *State v. McCoy*, 748 S.W.2d 809, 811 (Mo. App. E.D. 1988); *State v. Hillis*, 748 S.W.2d 694, 697-98 (Mo. App. E.D. 1988); *State v. Pollard*, 746 S.W.2d 632, 633 (Mo. App. E.D. 1988).

---

[2]    In *Carlyle v. Missouri Department of Corrections*, 184 S.W.3d 76, 79 (Mo. App. W.D. 2005), this Court suggested that *Lawhorn* had been implicitly overruled by *State ex rel. Nixon v. Russell*, 129 S.W.3d 867, 870-71 (Mo. 2004), to the extent that *Lawhorn* held that statutes affecting parole eligibility are substantive rather than procedural. *Carlyle* and *Russell* involved a different situation, however: in those cases, post-offense statutory amendments *lessened* an offender's minimum prison term before parole consideration. As the Missouri Supreme Court later recognized in two cases involving similar issues, no *ex post facto* question arises when "the amended statutes at issue . . . do not alter [the offender's] substantive rights in a manner that disadvantages him," and therefore *Lawhorn* is inapplicable in that context. *Dudley v. Agniel*, 207 S.W.3d 617, 619 n.4 (Mo. 2006); *Jones v. Fife*, 207 S.W.3d 614, 617 n.4 (Mo. 2006).

The General Assembly has likewise recognized that punishments for criminal offenses must be determined based on the law in effect at the time of the offense, disregarding later statutory amendments:

> No offense committed and no fine, penalty or forfeiture incurred, or prosecution commenced or pending previous to or at the time when any statutory provision is repealed or amended, shall be affected by the repeal or amendment, but the trial and punishment of all such offenses, and the recovery of the fines, penalties or forfeitures shall be had, in all respects, as if the provision had not been repealed or amended, except that all such proceedings shall be conducted according to existing procedural laws.

§ 1.160, RSMo 2016. Although an earlier version of § 1.160 allowed an offender to receive the benefit of a statutory amendment "if the penalty or punishment for any offense is *reduced or lessened* by any alteration of the law creating the offense," § 1.160, RSMo 2000 (emphasis added), since at least 1909 the legislature has specified that statutory amendments making criminal punishments *more severe* could not be applied to crimes committed earlier. *See* § 4920, RSMo 1909; § 3709, RSMo 1919; § 4468, RSMo 1929; § 4861, RSMo 1939.

This Court applied *Lawhorn* to a habeas petitioner who was identically situated to Williams in *Thomas v. Kemna*, 55 S.W.3d 487 (Mo. App. W.D. 2001). In *Thomas*, the offender was convicted in 1989 for a series of forcible rapes which he had committed in 1987. Like Williams, Thomas was classified as a Class X offender under the 1988 version of § 558.019, RSMo, even though his offenses predated the effective date of the 1988 amendments. *Thomas* held that an erroneous Class X offender classification was a sentencing defect correctible in a habeas proceeding. 55 S.W.3d at 490. In reasoning that is fully applicable here,

the Court also held that application of the 1988 statutory amendments violated the State and federal prohibitions on *ex post facto* laws:

> The provisions of § 558.019 in effect at the time that Mr. Thomas committed the forcible rapes did not permit the enhancement of Mr. Thomas's sentences under § 558.019.  Prior to his sentencing, the legislature amended subsection 2 of § 558.019 in 1988 to add that the statute applies to "dangerous felonies," which, under § 556.061(8), would include forcible rape.  In addition, § 557.021 was amended after Mr. Thomas committed the forcible rapes and before his sentencing.  Pursuant to this amendment, the unclassified felony of forcible rape is considered a class A felony for purposes of § 558.019 because the authorized punishment under § 566.030 includes life imprisonment or imprisonment for a term of 20 years or more.  Section 557.021.3, RSMo Supp.1988.  Under the 1988 amendments to §§ 558.019 and 557.021, Mr. Thomas would qualify as a class X offender for his forcible rape convictions.  Application of the 1988 versions of §§ 558.019 and 557.021 would violate the *ex post facto* clauses of the Missouri and United States Constitutions, however, since it would be a retrospective application of amendments adopted after Mr. Thomas committed the crimes and the amendments disadvantage Mr. Thomas because they negatively affect his parole eligibility.

*Id.* at 491 (citations and footnote omitted).

Despite her procedural objections to Williams' habeas petition, in her response the Warden states that she "has no reason to question the *Thomas* Court's analysis as it applies to the merits of Williams' claims."  We agree – Williams' claim is identical to the claim addressed in *Thomas* (and before that, in *Lawhorn* and related cases).  As in those cases, we hold that under the *ex post facto* clauses of the federal and State constitutions, Williams was erroneously found to be a Class X offender based on statutory amendments post-dating his offenses.

## Conclusion

Based on our conclusion that Williams was erroneously found to be a Class X offender, we grant his petition for writ of habeas corpus, and modify the judgment of Williams' 1989 convictions to remove his designation as a Class X offender. The 1989 judgment remains in full force and effect in all other respects. *See Thomas*, 55 S.W.3d at 493 (ordering identical relief); *Harry*, 81 S.W.3d at 637-38 (same).

_____
Alok Ahuja, Judge

All concur.